# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Glenn S. Cohen,

     Plaintiff,

  v.

Beachside Two-I Homeowners' Association;
Fredrick R. Krietzman;
Felhaber, Larson, Fenlon & Vogt, A
Professional Association;
U.S. Bancorp, d/b/a U.S. Bank Home
Mortgage,

     Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 05-706 ADM/JSM[1]

_____

Glenn S. Cohen, *pro se*.

Thomas A. Gilligan, Jr., Esq., Murnane Brandt, St. Paul, MN, argued on behalf of Defendant
Beachside Two-I Homeowners' Association.

Paul C. Peterson, Esq., Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, argued on
behalf of Defendants Fredrick R. Krietzman and Felhaber, Larson, Fenlon & Vogt, P.A.

Charles N. Nauen, Esq., and David J. Zoll, Esq., Lockridge Grindal Nauen P.L.L.P.,
Minneapolis, MN, argued on behalf of Defendant U.S. Bancorp d/b/a U.S. Bank Home
Mortgage.

_____

## I. INTRODUCTION

On July 11, 2005, oral argument before the undersigned United States District Judge was

heard on Plaintiff Glenn S. Cohen's ("Cohen" or "Plaintiff") Motion for Partial Summary

Judgment [Docket No. 20]. In his Complaint [Docket No. 1], Plaintiff Cohen alleges that

Defendants Fredrick R. Krietzman ("Krietzman") and Felhaber, Larson, Fenlon & Vogt, P.A.

---

[1] This case was previously assigned to Magistrate Judge Arthur J. Boylan but has been
reassigned to Magistrate Judge Janie S. Mayeron.

("Felhaber") violated the federal Fair Debt Collection Practices Act by, among other things, collecting attorney's fees in violation of Minnesota state law. Cohen also alleges that Defendant U.S. Bancorp d/b/a U.S. Bank Home Mortgage ("U.S. Bank")[2] violated Minn. Stat. § 333.06 by failing to file an assumed name certificate. Finally, Cohen alleges state law breach of contract claims against Defendant Beachside Two-I Homeowners' Association ("Beachside").

On June 27, 2005, Cohen filed a Motion for Leave to Amend the Complaint to Plead Punitive Damages and to state additional causes of action [Docket No. 54]. On August 1, 2005, Cohen filed a second Motion for Leave to Amend the Complaint to allege additional evidence with respect to Count 13 in the Amended Complaint [Docket No. 66]. Magistrate Judge Arthur J. Boylan denied Plaintiff's Motion for Leave to Plead Punitive Damages and denied as moot Plaintiff's second Motion to Amend to assert additional evidence with respect to Count 13 of the Amended Complaint [Docket No. 80]. Cohen sought reconsideration, and on September 27, 2005, Judge Boylan issued an Order denying Plaintiff's Request for Reconsideration [Docket No. 82]. Plaintiff's Objection to Judge Boylan's Order followed on September 30, 2005 [Docket No. 83]. Finally, on October 20, 2005, Cohen filed a Motion for Leave to Cite Additional Authority [Docket No. 94].

For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment is denied, Plaintiff's Appeal to Judge Boylan's Order is denied in its entirety, except with regard to

---

[2] In his Complaint, Cohen names "U.S. Bancorp, d/b/a U.S. Bank Home Mortgage" as a defendant. See Compl. In its Answer, Defendant U.S. Bank states that "U.S. Bancorp is a bank holding company and does not provide traditional banking or loan administration services, and, thus, is not a proper party defendant to this action. U.S. Bank Home Mortgage is a division of U.S. Bank National Association and also is not a proper party defendant. U.S. Bank National Association is the proper party defendant to this action." U.S. Bank Ans. ¶ 4. Accordingly, this Order will refer to "U.S. Bank" rather than "U.S. Bancorp" as the properly named Defendant.

his ability to allege emotional distress damages as an element of his libel claim, and Plaintiff's

Motion for Leave to Cite Additional Authority is denied.

## II. BACKGROUND

### A.    The Parties

Plaintiff Glenn S. Cohen is presently a resident of Monmouth County, New Jersey.

During the time period applicable to this matter, Cohen was a resident of Hennepin County,

Minnesota.  Compl. ¶ 4.  Defendant Beachside is a Minnesota non-profit corporation located in

Plymouth, Minnesota.  Beachside was created on January 29, 1982, to serve the common

interests of the homeowners in the Beachside Two-I town home development located in

Minnetonka, Minnesota.  Id. ¶¶ 5-6.  Defendant Krietzman is a Minnesota attorney employed by

the Minneapolis law firm of Felhaber, Larson, Fenlon & Vogt, P.A.  Id. ¶¶ 7, 11.  Finally,

Defendant U.S. Bank is a Delaware corporation with offices and banking locations in Minnesota.

Id. ¶¶ 12-13.

### B.    Beachside and the Governing Documents

Beachside Two-I is a planned community in Minnetonka, Minnesota, comprised of single

family town house style dwellings and "common areas."  Cohen Aff. [Docket No. 23] Ex. A at

1-2.  Each owner becomes a member of the Beachside Two-I Homeowners Association

("Association") upon purchase of his property.  Id. at 3.  Each lot is subject to general annual

assessments (to be paid monthly), master insurance premiums or assessments, and special

assessments for capital improvements.  Id.  The assessments, together with interest, costs, and

reasonable attorney's fees constitute a lien against the property, and each owner upon acceptance

of a deed consents to foreclosure of the lien upon nonpayment of the lien obligation.  Id.

Beachside is governed by three documents: a Declaration of Covenants, Conditions, and Restrictions ("Declaration"); By-Laws; and Rules and Regulations ("Rules").  See Cohen Aff. Exs. A, B, C.  The Declaration sets forth the manner in which the three assessments will be calculated and paid.  Cohen Aff. Ex. A at 3-7.  The By-Laws contain a supremacy clause, stating that "[i]n case of any conflict between the Declaration and these By-Laws, the Declaration shall control."  Cohen Aff. Ex. B at 7.  The By-Laws also give the Board of Directors the power to "[a]dopt and publish rules and regulations governing the use of the Common Area and facilities, and the personal conduct of the Members and their guests thereon, and to establish penalties for the infraction thereof."  Id. at 4.

## C.    Cohen's Payment of Monthly Assessments

Plaintiff Cohen purchased a Beachside town home, located at 5454 Sanibel Drive, and owned his town home from June 5, 1997, to November 19, 2004.  See Angell Aff. [Docket No. 42] Ex. A.  Cohen obtained a mortgage on his property from U.S. Bank, and made monthly mortgage payments to "U.S. Bank Home Mortgage."  See Cohen Aff. Exs. T, U.  Like all other Beachside owners, upon purchase of his town home, Cohen became a member of the Association and was obligated to pay monthly assessments.  Cohen regularly paid his monthly assessments without incident until September 1998, at which time Cohen failed to pay his monthly assessment.[3]  See Cohen Aff. Ex. D.  Cohen accounted for the delinquency the following month,

---

[3] The first three times Cohen failed to pay his monthly assessment, September 1998, November 1998, and January 1999, Cohen had a positive balance in his account with Beachside due to an initial credit payment.  The monthly assessments owed during those months were deducted from his positive balance with Beachside and no penalties resulted.  However, for the vast majority of the remaining months in which Cohen failed to pay his monthly assessments, the failure resulted in an immediate negative balance in his account with Beachside.  See Cohen Aff. Ex. D.

4

however, by paying double the monthly assessment due.  Id.

Cohen thereafter established a pattern of sometimes paying his monthly assessments and sometimes not.  Id.  Cohen would usually make up for his nonpayment by paying double the following month, or triple two months later, depending upon how many payments he had missed. Id.  This pattern continued until June 2003, at which time Cohen ceased paying his monthly assessments altogether.  Id.  No assessments were paid on the Cohen property again until one year later, at which time U.S. Bank satisfied all debts owed by Cohen to the Association by paying off the lien against Cohen's property.  See Cohen Aff. Ex. X.

**D.      The Late Fees**

In November 1999, the Association began levying $10 late fees against Cohen's account as a result of late payment of his monthly assessments.  Cohen Aff. Ex. D.  A $10 late fee was assessed against Cohen's account twenty-one times in thirty-three months.  Id.  The fee for late payment of monthly assessments was raised to $20 in August 2002, and a late fee of $20 was assessed against Cohen's account thirteen times in eighteen months.  Id.

In the early phase of the dispute, Cohen paid all late fees assessed against him, albeit not always on time.  Cohen Aff. Ex. S.  Cohen first noted his disagreement with the late fees by handwriting on an October 2002 Beachside account statement that "$20 late fee is probably an illegal penalty for a principal amount of only $153."  Id.  Cohen nonetheless continued to pay late fees assessed against him until January 2003, when he began sometimes paying the assessment amount due but not the late fees or legal fees.  Id.  This practice continued until he stopped making assessment payments altogether in June 2003.  Cohen formally informed the Association that he refused to pay late fees imposed on his account in an April 8, 2003 letter to

Beachside attorney Gregory Keller.  Angell Aff. Ex. G.

Beachside changed the $20 late fee policy in February 2004 to a 6% interest rate charge on past due assessments.  Cohen Aff. Ex. D.  Thereafter, Cohen was charged $7.46 in February 2004, $8.15 in March 2004, $9.02 in April 2004, and $9.75 in May 2004.  Id.

**E.     The Lien Foreclosure**

The Declaration states that "[a]ny assessment not paid within thirty (30) days after the due date shall bear interest from the due date at the rate of six percent (6%) per annum.  The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the property."  Cohen Aff. Ex. A at 7.  On September 11, 2003, Krietzman informed Cohen by letter that the Felhaber law firm represented Beachside and that Cohen's account had been referred to Felhaber for collection.  Cohen Aff. Ex. L.  The letter stated that as of September 2003, Cohen owed $922.80 in unpaid general and insurance assessments, costs, and attorney's fees.  Id.  On October 18, 2003, Cohen responded to Krietzman's letter by asserting that he disputed the alleged debt owed and that Krietzman should no longer contact him or send him collection notices, pursuant to the Fair Debt Collection Practices Act.  Cohen Aff. Ex. J.

On March 2, 2004, Beachside filed a Lien Statement with the Hennepin County Office of the Registrar of Titles, stating that Cohen owed $2,318.90 in unpaid general and insurance assessments, costs, and attorney's fees.  Cohen Aff. Ex. E.  On the same date, Beachside filed a Request for Notice of a Mortgage Foreclosure by Advertisement, Notice of Redemption Reduction, and Notice of Cancellation of Contract for Deed or Installment Contract ("Request for Notice").  Cohen Aff. Ex. F.  The following day, Krietzman wrote a letter to Cohen to inform

him that the Lien Statement and Request for Notice had been filed.  Krietzman advised Cohen

that the Board of Directors of the Association ("Board") had voted on January 26, 2004, to

foreclose the lien against Cohen, and that if Cohen did not pay his debt in full by March 15,

2004, the Association would most likely proceed with foreclosure.  Angell Aff. Ex. I.  Krietzman

also informed Cohen that the Board had voted to accelerate his 2004 annual assessments in the

event that he failed to pay any 2004 assessments for more than sixty days.  Id.  The assessment

acceleration would become effective on March 15, 2004.  Id.

On April 12, 2004, Beachside filed a Notice of Pendency to Foreclose Lien and Power of

Attorney to Foreclose Lien.  Cohen Aff. Ex. G.  On April 13, 2004, Krietzman returned Cohen's

check written to Beachside in the amount of $459.  Krietzman Aff. [Docket No. 48] Ex. 9.

Krietzman informed Cohen that Beachside was no longer prepared to accept partial payment

from Cohen and was moving forward with the foreclosure proceeding.  Id.  On April 20, 2004, a

Notice of Assessment Lien Foreclosure Sale ("the Notice") was published, announcing the

pending foreclosure sale.  Angell Aff. Ex. J; Krietzman Aff. Exs. 8, 10.

On May 5, Krietzman wrote to both Wells Fargo Bank Minnesota and Mercantile Bank,

FSB, to inform them of the foreclosure sale.  Krietzman Aff. Exs. 11-12.  A title search had

confirmed that these banks had an interest of their own in the property.  Id.  On May 14, 2004,

Krietzman wrote a letter to Ashley Winkler of U.S. Bank, noting his understanding that U.S.

Bank intended to pay off the lien against Cohen's property.  Angell Aff. Ex. K.  Krietzman

informed Winkler that the current amount of the lien was $5,920.08.  Id.  On May 17, 2004,

Winkler wrote to Cohen, informing him that U.S. Bank had paid the lien amount, but that "the

payment of this bill will be your responsibility in the future.  Your escrow account will be

analyzed reflecting this change, and your payment will be adjusted accordingly."  Cohen Aff.

Ex. X.  On May 27, 2004, Beachside filed a Satisfaction and Release of Lien, stating that the lien

had been satisfied when the debt was paid in full on May 14, 2004.  Cohen Aff. Ex. H.

Krietzman wrote to Cohen on June 8, 2004, to confirm that the lien had been satisfied and the

Association had stopped foreclosure of the lien.  Cohen Aff. Ex. N.  On April 7, 2005, Cohen

commenced this action.

### III. DISCUSSION OF SUMMARY JUDGMENT MOTION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion

for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995).

**B.     Inadequate Time for Discovery**

As an initial matter, Defendant Beachside alleges that Cohen's summary judgment

motion is premature.  Cohen filed his Complaint on April 7, 2005.  U.S. Bank, the last Defendant

to file an Answer, responded on May 19, 2005.  Cohen then filed his motion for partial summary judgment on May 24, 2005, less than one month after the earliest responding Defendant had filed its Answer, and before the pre-trial conference or any discovery had taken place.  As the Eighth Circuit has noted, "[d]iscovery does not have to be completed before a court can grant summary judgment, but summary judgment is proper only after the nonmovant has had adequate time for discovery."  In re Tempromandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1489-90 (8th Cir. 1997), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In this case, Plaintiff's motion for summary judgment was filed before there was any opportunity for discovery.

In his reply memorandum, Plaintiff relies on United States v. Casino Magic for the proposition that a party opposing summary judgment who believes that he has not had adequate opportunity to conduct discovery must seek relief by showing "what specific facts *further discovery* might unveil."  293 F.3d 419, 426 (8th Cir. 2002) (emphasis added).  Plaintiff fails to understand the significance of the phrase "further discovery."  In Casino Magic, the court found that both parties had already been given the opportunity to engage in extensive discovery, as the discovery period had exceeded two years.  Id. at 426-27.  This is a wholly different factual scenario from the instant case where no discovery has yet occurred.

Although Plaintiff's motion is premature, the parties have extensively briefed the issues in Plaintiff's wide ranging mutli-count Complaint.  Because many of the claims are entirely based on documents and there is no request for further discovery on some claims, the Court will reach the merits of the claims in an attempt to bring focus to this litigation as it proceeds through discovery.

**C.      Fair Debt Collection Practices Act ("FDCPA")**

Cohen alleges that Defendants Krietzman and Felhaber violated the FDCPA by charging

attorney's fees in violation of Minn. Stat. § 582.01.[4]  The unfair practices section of the FDCPA

states in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to
> collect any debt.  Without limiting the general application of the foregoing, the following
> conduct is a violation of this section: (1) The collection of any amount (including any
> interest, fee, charge, or expense incidental to the principal obligation) unless such amount
> is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).  Cohen essentially argues that Krietzman and Felhaber have violated both

the "expressly authorized by the agreement" and the "permitted by law" prongs of the statute.[5]

Krietzman and Felhaber respond with three arguments.  First, they allege that Minn. Stat. §

582.01 does not apply here because the statute concerns mortgages, and the debt at issue is a

lien.  Second, they argue that the principal case relied upon by Cohen, In re Smoots, 230 B.R.

140 (D. Minn. 1996), has been legislatively overruled by section 515B.3-116(h)(4) of the

Minnesota Common Interest Ownership Act ("MCIOA").  Third, Krietzman and Felhaber allege

that even if they were wrong on the law, the bona fide error defense of the FDCPA applies,

---

[4] In his memorandum of law, Cohen claims a violation of Minn. Stat. § 580.30.
However, Cohen likely means to assert a violation of Minn. Stat. § 582.01 instead.  Section
580.30 concerns the requirements for reinstatement of a mortgage when the amount due on a
mortgage has been paid off prior to a foreclosure sale.  While section 580.30 does incidentally
mention the payment of attorney's fees as part of the amount due, the statute appears to be
setting the minimum amount of attorney's fees that must be paid in order for the mortgage to be
reinstated, rather than limiting the amount of attorney's fees that can be charged when a
mortgage is reinstated.

[5] The parties focus their arguments on the "permitted by law" prong of the unfair
practices test, rather than the "authorized by the agreement" prong.  Although the governing
documents mention the collection of reasonable attorney's fees, they do not state a specific
amount, here the $5,920.08 charged.

10

absolving them of liability.

Krietzman and Felhaber's first argument is unpersuasive.  While they correctly assert that all mortgages are liens but not all liens are mortgages, the lien in this case functions very much like a traditional mortgage.  Although Cohen did not borrow money from the Association, he did contractually bind himself to a lien on his real property through the monthly association assessments.  In the event that Cohen did not pay the lien amount, the Association had the power to foreclose the lien and sell the real property at a foreclosure sale.  This procedure is very similar to a traditional mortgage foreclosure.

Krietzman and Felhaber's second argument is that section 515B.3-116(h)(4) of the MCIOA has legislatively overruled Smoots with regard to a cap on attorney's fees.  Smoots interpreted an old version of section 515B.3-116(h)(4) that incorporated the attorney's fee provision in Minn. Stat. § 582.01, subd.1a and held that the foreclosing attorneys were entitled to a flat fee of $500.  In re Smoots, 230 B.R. 140, 142-43 (D. Minn. 1996).  After Smoots was decided, the legislature amended the MCIOA so that section 515B.3-116(h)(4)(ii) of the MCIOA now states: "in a foreclosure by advertisement under chapter 580, the foreclosing party shall be entitled to costs and disbursements of foreclosure and attorneys fees authorized by the declaration or bylaws, notwithstanding the provisions of section 582.01, subdivisions 1 and 1a." However, Section 515B.1-102(b)(3) of the MCIOA states "[t]his chapter shall not apply to cooperatives and planned communities created prior to June 1, 1994; except by election . . . ." Beachside was created prior to 1994 and none of the parties have submitted any evidence to show that Beachside has elected to be governed by the MCIOA.  Cohen Aff. Ex. A.  Therefore, as admitted by Defendants, the MCIOA does not apply in this case and does not create a defense.

11

Krietzman and Felhaber's third argument does have merit.  Section 582.01 is the best fit for statutory authority to this case.  Minn Stat. 582.01, subd. 1 states as follows:

> The mortgagor may, in the mortgage, covenant to pay or authorize the mortgagee to retain an attorney's fee in case of foreclosure, but such fees in case of foreclosure by advertisement shall not exceed the following amounts, and any provision for fees in excess thereof shall be void to the extent of the excess: [schedule omitted].

Minn. Stat. § 582.01, subd.1.  Section 582.01, subd. 1a, modifies subd. 1 as follows: [n]otwithstanding subdivision 1 to the contrary, the minimum fee for foreclosure by advertisement of mortgages executed after July 31, 1992, is $500.  Minn. Stat. § 582.01, subd. 1a.  Beachside's Declaration dictates that "[e]very Owner of a lot by acceptance of a deed therefore further consents to the foreclosure of any such lien by action or by advertisement or otherwise as provided by applicable law for the foreclosure of a real estate mortgage."  Cohen Aff. Ex. A at 4.  Beachside is required by its governing documents to follow the mortgage foreclosure by advertisement statutes, and indeed they did so in this case by filing the Request for Notice pursuant to Minn. Stat. § 580.032.

The application of section 582.01, which caps the amount of attorney's fees recoverable in a mortgage foreclosure by advertisement at a very small amount, renders Krietzman and Felhaber in violation of the FDCPA if they have collected an amount of attorney's fees greater than that permitted by law.  Whether there is a statutory violation depends on determining 1) the maximum amount of fees chargeable pursuant to section 582.01, and 2) the amount Krietzman and Felhaber collected in mortgage foreclosure by advertisement fees.

Section 582.01, subdivision 1 sets forth a schedule of *maximum* fees chargeable, depending on the original principal amount secured by mortgage.  See § 582.01, subd. 1

(emphasis added).  Subdivision 1a, on the other hand, which was added to the statute in 1992, states that "the *minimum* fee for foreclosure by advertisement of mortgages executed after July 31, 1992, is $500."  § 582.01, subd. 1a (emphasis added).  The minimum fee in subdivision 1a also happens to exceed all of the maximum fees set forth in subdivision 1, save for the addition of $35 to the base maximum amount for each additional $5,000 of a mortgage greater than $10,000, which could bring the total amount of attorney's fees chargeable to greater than $500.  A plain language interpretation of subdivision 1a suggests that there is no set maximum amount of attorney's fees chargeable, and an attorney may set his fee at any amount above $500.  However, reading subdivision 1a in such a fashion would essentially nullify subdivision 1, a reading that can not stand, since subdivision 1 has not been repealed or modified.  The most logical interpretation of the statute, which results in giving effect to all of the statute's subdivisions, is that the minimum amount of attorney's fees chargeable is $500, and the minimum amount can be increased by $35 for each $5,000 increase in a mortgage amount greater than $10,000.  In this case, given a lien amount of $5,920.08, the most Krietzman and Felhaber could have charged for the mortgage foreclosure by advertisement proceeding under section 582.01 is $500.

Next, Krietzman and Felhaber allege that not all of the attorney's fees in this case were charged in connection with the lien foreclosure proceeding.  Specifically, Krietzman asserts that all of the attorney's fees charged prior to February 2004 were related solely to collection activities, and attorney's fees for foreclosure activities were not billed until February 2004.  Krietzman Aff. at 6.  Taking Krietzman's assertions as true, the amount of attorney's fees

charged by Krietzman in connection with the foreclosure proceedings was $1,364.[6]  See

Krietzman Aff. at 5-6.  This amount exceeds the $500 limit "permitted by law" in section

582.01.

However, as Krietzman and Felhaber argue, they may be eligible for the protection of the

bona fide error defense.  Section 1692k(c) of the FDCPA states:

> A debt collector may not be held liable in any action brought under this subchapter if the
> debt collector shows by a preponderance of evidence that the violation was not
> intentional and resulted from a bona fide error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  The Eighth Circuit has held that the bona fide error defense is not

available for mistakes of law.  Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451-52 (8th Cir. 2001),

citing Hulshier v. Global Credit Servs., Inc., 728 F.2d 1037, 1038 (8th Cir. 1984).  However, the

Eighth Circuit has not elaborated on its reasoning for excluding mistakes of law from the bona

fide error defense, other than to say that it accepts the Ninth Circuit analysis.  See Baker v. G.C.

Servs. Corp., 677 F.2d 775, 779-80 (9th Cir. 1982).  In Baker, the Ninth Circuit removed

mistakes of law from the FDCPA bona fide error defense by analogizing it to the bona fide error

defense in the Truth In Lending Act ("TILA").  Id. at 779.  The court noted that "it has been

uniformly held that unintentional 'clerical errors . . . are the only violations this section (of the

TILA) was designed to excuse.'"  Id.

The Seventh and Tenth Circuits have since parted company with the Ninth Circuit's

analysis in Baker, and have come to the opposite conclusion that the FDCPA bona fide error

defense does include mistakes of law.  See Nielsen v. Dickerson, 307 F.3d 623, 640-42 (7th Cir.

---

[6] This number is arrived at by adding the total amount of attorney's fees charged since
February 2004.  Krietzman Aff. at 5-6.

2002); <u>Johnson v. Riddle</u>, 305 F.3d 1107, 1121-24 (10th Cir. 2002).  In <u>Johnson</u>, the Tenth

Circuit noted that most of the courts that held that the bona fide error defense does not apply to

mistakes of law were following the Ninth Circuit's decision in <u>Baker</u>.  <u>Johnson</u>, 305 F.3d at

1122.  The <u>Johnson</u> court explained that the TILA analogy in <u>Baker</u> was faulty because the bona

fide error provision in the TILA statute expressly defined bona fide errors as including "clerical"

type errors and not including "errors of legal judgment," while the FDCPA bona fide error

section contains no such express inclusions or exclusions.  <u>Id.</u> at 1122-23, <u>citing</u> <u>Jenkins v.</u>

<u>Heintz</u>, 124 F.3d 824, 832 n.7 (7th Cir. 1997).  The court also found that the limited legislative

history of the FDCPA bona fide error defense suggested that legal errors were intended to be

included: "A debt collector has no liability, however, if he violates the act *in any manner,*

*including with regard to the act's coverage,* when such violation is unintentional and occurred

despite procedures designed to avoid such violations."  <u>Id.</u> at 1123, <u>citing</u> S. Rep. No. 95-382 at

5.

Given the split in the Circuits and the Eighth Circuit's lack of any discussion of why a

bona fide error defense might not apply to a mistake of law in the FDCPA context, the claim

should remain for discovery as to whether the error was intentional or unintentional, and whether

procedures were in place to avoid such errors.  The claim should also remain for discovery as to

the exact amount charged in attorney's fees solely related to foreclosure activities.  Plaintiff's

motion for summary judgment on the FDCPA claim is denied.

**D.      Claims Against Defendant Beachside**

Plaintiff Cohen asserts a number of state law claims against Defendant Beachside based

on breach of contract.

1.      **Late Fees of $10 and $20**

In count one, Cohen argues Beachside lacked the authority to charge $10 and $20 late

fees for past due monthly assessments because nothing in the Declaration or the By-Laws

granted Beachside the authority to charge such late fees.[7]  To the extent that the Rules authorized

a late fee charge for past due monthly assessments, the rule is void because it conflicts with the

Declaration and By-Laws.  Defendant Beachside responds that while the Declaration and By-

Laws may not affirmatively grant the Association the power to charge $10 and $20 late fees,

there is nothing in the Declaration or By-Laws that prohibits the Association from charging such

late fees either.

Article IV, Section 10 of the Declaration states "[a]ny assessment not paid within thirty

(30) days after the due date shall bear interest from the due date at the rate of six percent per

annum."  Cohen Aff. Ex. A at 7.  Article XI, Section 11.1 of the By-Laws states "[a]ny

assessments which are not paid when due shall be delinquent.  If the assessment is not paid

within thirty days after the due date, the assessment shall bear interest from the date of

delinquency at the rate of six percent (6%) per annum . . . ."  Cohen Aff. Ex. B at 7.  Article VII,

Section 7.1 of the By-Laws states that "[t]he Board of Directors shall have power to: (a) adopt

and publish rules and regulations governing the use of the Common Area and facilities, and the

personal conduct of the Members and their guests thereon, and to establish penalties for the

---

[7] In his second and third counts against Defendant Beachside, Plaintiff Cohen alleges that
the $10 and $20 late fees charged by Defendant Beachside are an unenforceable penalty and void
because the condition precedent notice was not received.  However, Plaintiff's second and third
"counts" are really alternative arguments for the proposition that the $10 and $20 late fees
charged by Beachside were unauthorized.  Because an analysis of the legality of the imposition
of the $10 and $20 late fees disposes of the issue, there is no need to address Plaintiff's
alternative arguments.

infraction thereof." Cohen Aff. Ex. B at 4. The Rules state "[d]ues are payable on the first of each month. Dues not received by the 10th of the month are subject to late fees." Cohen Aff. Ex. C at 2.

The Declaration and the By-Laws give the Board the authority to charge late fees at the rate of 6% per annum for any assessment that is past due by thirty days, but late fees of $10 or $20 are not explicitly mentioned. The By-Laws do allow the Board to publish rules regarding the common area, but do not expressly give the Board the power to make rules regarding any other subject. A late fee for past due assessments does not arise from an issue with the common area, and therefore, the Board did not have the authority to promulgate a rule regarding the collection of late fees. While the Board could have amended its Declaration or By-Laws to provide for the collection of $10 and $20 late fees, they chose not to do so, and as a result of the Board's failure to follow the procedures established by their own governing documents, the $10 and $20 late fees collected in this case are void as unauthorized by Beachside's governing documents.

Defendant Beachside, however, contends that even if the governing documents do not permit Beachside to collect $10 and $20 late fees for past due assessments, Plaintiff's recovery is limited by the voluntary payment doctrine. "The voluntary payment doctrine is a long-standing doctrine of law, which clearly provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." Indep. Glass Ass'n, Inc. v. Safelite Group, Inc., No. 05-238, 2005 WL 2093035, at *10 (D. Minn. Aug. 26, 2005), citing Hanson v. Tele-Communications, Inc., No. C7-00-534, 2000 WL 1376533, at *3 (Minn. Ct. App. Sept. 26, 2000).

> The rule is that money paid voluntarily, with full knowledge of the facts, cannot be recovered back. If a man chooses to give away his money, or to take his chances whether he is giving it away or not, he cannot afterwards change his mind; but it is open to him to show that he supposed the facts to be otherwise, or that he really had no choice.

Hanson at *3, citing Joannin v. Ogilvie, 52 N.W. 217, 217 (Minn. 1892). Plaintiff Cohen contends his payment of late fees was never voluntary, but was disputed from the beginning. He asserts that he refused to pay late fees in January 2000, only to be told that if he did not pay the late fees in question, he would be subject to more late fees. However, Plaintiff offers no evidence on this point, and Plaintiff's own statement of account shows that he in fact paid the late fees charged in January 2000. Cohen Aff. Ex. D. A handwritten note on Plaintiff's October 2002 account statement that "$20 late fee is probably an illegal penalty for a principal amount of only $153" is the first evidence of contest of the fee. Cohen Aff. Ex. S. However, Cohen continued to pay late fees after expressing that sentiment. Cohen Aff. Ex. D. Cohen did not cease paying late fees assessed against him until January 2003. Id. On April 8, 2003, Cohen wrote a letter to Beachside attorney Gregory Keller, stating that he believed the late fees charged to be "not just unconscionable but probably illegal." Angell Aff. Ex. G. Cohen further stated that he "refuse[d] to pay the late fees alleged as due in your notice dated March 18, 2003." Id.

Cohen further contends because Beachside misrepresented to him a right to collect the disputed late fees and legal fees, and even the general assessments themselves, when it did not have that right, Beachside is prohibited from the defense of the voluntary payment doctrine. However, it is clear from the Rules that Beachside itself believed it had the authority to charge late fees for past due assessments. Furthermore, if Cohen disputed the late fees, he had options other than just acquiescing and paying the fees. The Rules establish a hearing procedure in which residents have the right to challenge any sanctions imposed upon them. See Cohen Aff.

18

Ex. C at 7.  While Cohen had a copy of the Rules and presumably knew their contents, he never availed himself of the hearing procedure.

In conclusion, although Cohen is entitled to summary judgment on his claim that the $10 and $20 late fees were not authorized by the governing documents, the voluntary payment doctrine precludes Cohen from recovering any late fees that were voluntarily paid.  Therefore, Cohen is entitled to recover only late fees that he refused to pay beginning in January 2003.[8]

### 2.        Attorney's Fees Collected in the Lien Amount

In counts four and five, Plaintiff Cohen alleges that the Declaration did not grant authority to Beachside to assess attorney's fees and Beachside collected more fees than permitted by Minnesota statute.  Although Plaintiff's allegations are listed as separate counts, they are essentially alternative arguments for the same proposition.

First, Plaintiff argues that the Declaration did not authorize the collection of attorney's fees.  However, Article IV, Section 1 of the Declaration states as follows:

> The general annual assessments, master insurance assessments and the special assessments for capital improvements, together with interests, costs, and *reasonable attorney's fees,* shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made.  Each such assessment, together with interest, costs, and *reasonable attorney's fees,* shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due. . . .  Each assessment, together with interest, costs and *reasonable attorney's fees,* shall also be the individual obligation of the person who was the Owner of such Lot at the time the assessments become due and such personal obligation shall not pass to such Owner's successors in title unless expressly assumed by them.

---

[8] It is unclear from the affidavits exactly how much in late fees was charged to Cohen from January 2003 onward.  According to the affidavits, Cohen was charged a total of $194.38 from January 2003 through July 2003 and January 2004 though May 2004.  Whether Cohen was charged late fees from August 2003 through December 2003 is not reflected in the documents of record.  Document discovery may clarify the amount to which Plaintiff is entitled within the parameters of the liability established by this ruling.

Cohen Aff. Ex. A at 3-4 (emphasis added).  Article IV, Section 9 of the Declaration states the

following with regard to lien foreclosure "[u]pon any such foreclosure, the Owner shall be

required to pay the *costs and expenses* thereof, and such costs and expenses shall also constitute

a lien on such Lot.  Id. at 6 (emphasis added).  Article IX, Section 11.1 of the By-Laws states:

> If the assessment is not paid within thirty days after the due date, the assessment shall
> bear interest from the date of delinquency at the rate of six percent (6%) per annum, and
> the Association may bring an action at law against the Owner personally obligated to pay
> the same or foreclose the lien against the property, and interest, costs and *reasonable
> attorney's fees* of any such action shall be added to the amount of such assessment.

Cohen Aff. Ex. B at 7 (emphasis added).  Plaintiff argues the Declaration and By-Laws conflict

with one another, and that neither document explicitly authorizes the collection of attorney's

fees.  A fair reading of the Declaration and the By-Laws as a whole evinces an intent to

authorize the Board to collect attorney's fees from residents as part of the assessment lien on the

property.  While it is true that the term "reasonable" is somewhat amorphous, it is not so vague

as to prohibit the collection of attorney's fees in this case.  See Krietzman Aff. at 6.

Plaintiff also argues that attorney's fees can not be collected because the governing

documents only authorize the collection of attorney's fees "upon such foreclosure," and,

although a foreclosure proceeding was instituted, an actual foreclosure sale never occurred

because U.S. Bank paid off the lien amount in advance of the sale date.  As Defendant Beachside

correctly responds, the term "foreclosure" does not have as narrow a meaning as Plaintiff

contends.  Black's Law Dictionary defines "foreclosure" as "[a] legal proceeding to terminate a

mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to

force a sale in order to satisfy the unpaid debt secured by the property."  Black's Law Dictionary

658 (7th ed. 1999).  "Foreclosure sale" is defined as "[t]he sale of mortgaged property,

authorized by a court decree or a power-of-sale clause, to satisfy the debt." Id. at 1338.

Therefore, because the term "foreclosure" encompasses the entire foreclosure process rather than

just the completed foreclosure sale itself, Defendants were entitled to collect attorney's fees.

Second, Plaintiff argues that the attorney's fees collected violate Minn. Stat. § 582.01.

As discussed above with regard to the claims asserted against Krietzman and Felhaber, the

attorney's fees charged specifically for the foreclosure proceeding are void to the extent that they

surpass the maximum amount permitted by Minn. Stat. § 582.01. Unlike Defendants Krietzman

and Felhaber, Beachside can not rely on the bona fide error defense of the FDCPA because

Beachside is not charged with violating the FDCPA. Discovery should focus on the amount of

attorney's fees expended specifically on the lien foreclosure in excess of the statutory maximum

as well as the potential applicability of the voluntary payment doctrine.

### 3.     Beachside's Lack of Authority to Increase Assessment Payments

In count eight, Cohen contends that the assessment increases charged by the Board

violated the provisions of the governing documents. Cohen arrives at this conclusion by a

piecemeal, section-by-section interpretation of the governing documents. However, an analysis

of the Declaration as a whole reveals that Beachside's interpretation of the Declaration is correct.

Sections 3, 4, and 5 of Article IV enunciate the ways in which the general, master

insurance, and special assessments are to be calculated. Section 3 states in relevant part that

"[t]he Board of Directors may fix the general annual assessment to an amount not in excess of

the maximum," "the maximum general assessment may be increased each year not more than

5% above the maximum assessment for the previous year without a vote of the membership,"

and "the maximum general annual assessment may be increased above 5% by a vote of two-

thirds (2/3) of each class of members who are voting in person or by proxy, at a meeting duly called for this purpose." Section 4 states that "[t]he Board of Directors shall fix the master insurance premium or assessment at an amount as defined by competitive bids." Section 5 states that the Association may only levy special assessments "provided that any such assessment shall have the assent of two-thirds (2/3) of the votes of each class of members who are voting in person or by proxy at a meeting duly called for this purpose."

Section 6 of Article IV requires that "[w]ritten notice of any meeting called for the purpose of taking any action authorized under Section 3, 4 or 5 shall be sent to all members and all First Mortgagees of record not less than 15 days nor more than 60 days in advance of the meeting," and that a quorum must be present at such meeting. Cohen interprets Section 6 to require that a meeting be called for any action that is authorized by Sections 3, 4, or 5. He argues because Beachside did not call a meeting for times that it increased the monthly assessments by less than 5%, it violated the Declaration.

Section 6 does not require a meeting for *any* action taken under Sections 3, 4, or 5. Rather, Section 6 requires that *when a meeting is required* for the purpose of taking an action under Sections 3, 4, or 5, then notice of the meeting must be sent out and a quorum must be present at the meeting. Any other interpretation simply doesn't make sense. Section 3 authorizes the Board to increase the annual assessment unilaterally as long as the increase does not exceed 5%. Similarly, Section 4 authorizes the Board to unilaterally fix the master insurance assessment according to competitive bids. No meeting or vote of the membership is required to take either action, and therefore, it does not follow that the Board is required to send out notices and call a meeting. Section 6 only applies to situations under Sections 3, 4, or 5 when the Board

22

is required to call a meeting and secure a vote of the membership, such as when the Board desires to raise the annual assessment by more than 5%, or when the Board desires to levy a special assessment.

In this case, the Board never increased the general annual assessments by more than 5% during the time that Cohen owned his town home.  <u>See</u> Angell Aff. Ex. H.  The Board set master insurance assessments according to competitive bids, pursuant to the governing documents. There are no allegations that the Board charged special assessments during this time.  Based on the record before the court, the assessments charged to Cohen appear to be consistent with Beachside's governing documents.  Summary judgment for the Plaintiff with respect to count eight is denied.

### 4.     Lien Statement and Attorney's Fees Void Because No Amount Owed to Beachside

In count six, Plaintiff disputes the amount of money he allegedly owed to Beachside and claims that in actuality, Beachside owed money to him.  Essentially, Cohen argues that by prevailing on all of his asserted claims and subtracting from his account all of the late fees, legal fees, and increased assessments ever charged to him, his account would actually hold a positive balance, reflecting the amount he had overpaid to Beachside.  Given the legal deficiencies in his arguments as discussed <u>supra</u>, there is no basis for summary judgment on this claim.

### E.     Claim Against Defendant U.S. Bank

Plaintiff alleges during his ownership of 5454 Sanibel, his monthly mortgage statements contained the name "U.S. Bank Home Mortgage," and each month he wrote mortgage checks payable to that same entity.  Plaintiff argues that Defendant U.S. Bank National Association violated Minn. Stat. § 333.01 by doing business as U.S. Bank Home Mortgage without filing a

certificate of assumed name with the Minnesota Secretary of State.[9]  Defendant responds that

U.S. Bank Home Mortgage is a division of U.S. Bank National Association.  Because U.S. Bank

National Association holds the sole interest in U.S. Bank Home Mortgage, U.S. Bank National

Association argues it is not required to file a certificate of assumed name.  The name "U.S. Bank

Home Mortgage" sets forth the name of every person with a legal interest in the business.

Minn. Stat. § 333.01 subd. 1 states that:

> No person shall hereafter carry on or conduct or transact a commercial business in this
> state under any designation, name, or style, which does not set forth the true name of
> every person interested in such business unless such person shall file in the office of the
> secretary of state, a certificate setting forth the name and business address under which
> the business is conducted or transacted, or is to be conducted or transacted, and the true
> name of each person conducting or transacting the same, with the address of such person.

Minn. Stat. § 333.01 subd. 1.  Plaintiff misinterprets Minn Stat. § 333.01.  The statute does not

require all businesses doing business under a different name to file a certificate of assumed name

with the secretary of state.  Rather, the statute merely requires businesses doing business under a

different name *that also does not set forth the true name of every person interested in the*

*business* to file a certificate of assumed name with the secretary of state.  Section 333.001

defines "true name" with respect to corporations as "the full corporate name as stated in its

articles, if a corporation."  Minn. Stat. § 333.001.  The name "U.S. Bank Home Mortgage"

appears to set forth the name of every person interested in U.S. Bank Home Mortgage—namely,

U.S. Bank National Association.  However, neither Cohen nor U.S. Bank has submitted any

documentary evidence of the true name of U.S. Bank under its articles of incorporation.

---

[9] Cohen alleges in his Complaint that U.S. Bank violated section 333.06, which
essentially states that if a person violates section 333.01 and subsequently defends against a civil
action, the plaintiff is entitled to $250.  For purposes of resolving the issue in this case, however,
the pivotal question is whether U.S. Bank has violated section 333.01.

Therefore, Plaintiff's motion for summary judgment is denied as material facts remain in issue.

## IV. DISCUSSION OF APPEAL OF MAGISTRATE'S ORDER

**A.      Standard of Review**

In reviewing an Order of a nondispositive pretrial matter, the district court "shall consider such objections and shall modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); see also D. Minn. LR 72.2(a).  The standard of review is extremely deferential.  Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Chakales v. Commissioner of Internal Revenue, 79 F.3d 726, 729 (8th Cir. 1996).

**B.      Standard Applied by Judge Boylan**

As an initial matter, Cohen objects to the standard applied by Judge Boylan to determine whether or not Cohen should be granted leave to amend his Complaint.  Cohen alleges that Judge Boylan improperly applied a summary judgment standard rather than a motion to dismiss standard.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  There is, however, "no absolute right to amend and a finding of 'undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment' may be grounds to deny a motion to amend."  Doe v. Cassel, 403 F.3d 986, 990-91 (8th Cir. 2005); see also Foman v. Davis, 371 U.S. 178, 182 (1962).  "Likelihood of success on the new claim or

defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous."
Becker v. Univ. of Neb., 191 F.3d 904, 908 (8th Cir. 1999).  In any event, the grant or denial of a
motion for leave to amend is within the discretion of the court.  Id.

It is well settled that "futility" alone is a basis for denying a motion to amend a
complaint.  Also, while the Eighth Circuit has essentially held that summary judgment is not
ordinarily a proper standard upon which to deny leave to amend, the likelihood of success on the
merits may be considered if the claim is clearly frivolous.  In this case, Judge Boylan denied
Plaintiff's proposed amendments on the ground of futility, as Plaintiff's claims were so devoid of
any legal or evidentiary basis as to render them essentially frivolous.  Judge Boylan also noted
that a court may raise summary judgment sua sponte, and Plaintiff's claim fails under either the
pleadings amendment standard or the summary judgment standard.  See Kellar v. Von Holtum,
568 N.W.2d 186, 192 (Minn. Ct. App. 1997).  This Court concludes that Judge Boylan's
application of the summary judgment standard was not clearly erroneous or contrary to law
within the context of this case, whether raised on Judge Boylan's own initiative or applied in the
face of frivolous proposed amendments.

**C.     Denial of Additional FDCPA Claims**

Plaintiff first requests leave to amend to add two counts alleging additional violations of
the FDCPA by Defendants Krietzman and Felhaber.  Specifically, Cohen alleges that the letters
to Wells Fargo Bank Minnesota and Mercantile Bank, FSB, on May 5, 2004, to inform those
entities about the impending lien foreclosure sale were unauthorized third party communications
in violation of 15 U.S.C. § 1692c(b) and contained threats to take unlawful action in violation of
15 U.S.C. § 1692e(5); the May 14, 2004 letter to Ashley Winkler of U.S. Bank, confirming the

26

understanding that U.S. Bank wished to pay off the lien amount, violated 15 U.S.C. § 1692c(b) as well as several provisions of § 1692e relating to the use of false representation to collect a debt, and provisions of 1692f relating to the use of unfair means to collect a debt; and the June 8, 2004 letter from Krietzman to Cohen, informing Cohen that U.S. Bank had satisfied the lien amount and the foreclosure sale had been halted, contained false representations in violation of 15 U.S.C. § 1692e(2)(A).

Judge Boylan found as a matter of law that the letters dated May 5 and May 14, 2004, were sent in connection with lien enforcement rather than debt collection and therefore outside the reach of the FDCPA.  See Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004). The June 8, 2004 letter was also connected to lien foreclosure rather than debt collection, but even if it could be construed as a letter related to debt collection within the meaning of the FDCPA, 15 U.S.C. § 1692c(c)(1) specifically authorizes such a letter to advise an individual that the debt collector is no longer pursuing collection activities.

Cohen contends mortgage foreclosures are not exempt from the FDCPA, and relies on cases from the Second, Third, and Eleventh circuits.  See Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227 (3rd Cir. 2005); In re Martinez, 311 F.3d 1272 (11th Cir. 2002); Romea v. Heiberger & Assocs., 163 F.3d 111 (2nd Cir. 1998).  The cases are either factually distinguishable or inapposite.  All three cases involve situations in which communications were sent directly to the debtor in question, and even if the mailing discussed other subjects or contained other types of communications, all were direct attempts to collect debt within the meaning of the FDCPA.  In the instant case, the letters sent on May 5, 2005 were sent to financial institutions rather than Cohen and were not attempts to collect debt.  Rather, they were

27

notices informing institutions with interests in the Cohen property of the impending foreclosure sale. The May 14 letter was merely an exchange of information with Defendant U.S. Bank, confirming that U.S. Bank intended to pay off the lien amount. Finally, even if it does fall within the ambit of the FDCPA, the June 8 letter is clearly authorized by 15 U.S.C. § 1692c(c)(1). Therefore, this Court finds that Judge Boylan's Order with respect to the proposed additional FDCPA claims is not clearly erroneous or contrary to law.

**D.      Denial of Abuse of Process Claim**

Plaintiff moved to add a claim of abuse of process against Defendants Beachside, Krietzman, and Felhaber, asserting that the collection of unauthorized fees was clearly Krietzman's purpose in pursuing the foreclosure action. The elements of abuse of process are 1) the existence of an ulterior purpose and 2) the act of using the process to accomplish a result outside the scope of the proceeding in which the process was issued. Hoppe v. Klapperich, 28 N.W.2d 780, 786 (Minn. 1947). Judge Boylan denied Cohen's request to amend to allege a claim for abuse of process upon concluding that Plaintiff has presented no evidence to support the element that the collection of fees was an ulterior motive behind the foreclosure action. Rather, all evidence suggests that Krietzman was merely doing the job he was hired to do, and pursued foreclosure action as a result of Cohen's failure to pay assessments, costs, and attorney's fees. The Court adopts Judge Boylan's findings and concludes that they are not clearly erroneous or contrary to law.

**E.      Denial of Conversion Claim**

Cohen also seeks to allege a claim for conversion against the four Defendants with respect to the money taken from his escrow account at U.S. Bank to pay off the lien amount.

Cohen alleges his permission was required and that Defendants Krietzman and Felhaber demanded funds that they knew exceeded the maximum amount of attorney's fees permitted by statute.  Cohen objects to Judge Boylan's conclusion that the release or possession of escrow funds was legally justified under provisions of contract and/or mortgage documents which established the relationships between the parties.  Judge Boylan further determined that Cohen's claim for conversion would be futile.

Conversion is "an act of willful interference with the personal property of another, done without lawful justification, by which any person entitled thereto is deprived of use and possession."  Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 585 (Minn. 2003).  Where possession is held through proper legal channels, a claim for conversion will not lie.  See Naegle Outdoor Adver., Inc. v. Minneapolis Cmty. Dev. Agency, 551 N.W.2d 235, 238 (Minn. Ct. App. 1996); see also Balasuriya v. Bemel, 617 N.W.2d 596, 601 (Minn. Ct. App. 2000).  Plaintiff has presented no evidence to support a claim that Defendants interfered with Plaintiff's escrow account funds through any means other than legally justified channels.  Plaintiff's claim for conversion is futile and therefore Judge Boylan's holding with respect to the conversion claim is adopted.

**F.      Denial of Negligent Infliction of Emotional Distress Claim**

Plaintiff objects to Judge Boylan's denial of his motion to add a claim for negligent infliction of emotional distress.  Judge Boylan held that Cohen's claim for negligent infliction of emotional distress was futile and that his allegations that Defendants' behavior caused him to be worried, upset, and nervous were facially insufficient.  Plaintiff claims he falls within an exception to the zone of danger rule, allowing a plaintiff to recover for mental anguish and

suffering when his rights have been directly and tortiously invaded.  Defendant Beachside

responds that to the extent that Cohen derivatively claims negligent infliction of emotional

distress based upon his defamation claim, the claim must fail because Cohen's defamation claim

will also fail.

In Lickteig v. Alderson, Ondov, Leonard & Sweeten, the Minnesota Supreme Court

clarified the law in Minnesota with respect to claims for emotional distress:

> In tort cases, emotional distress may be an element of damages in only three
> circumstances.  First, a plaintiff who suffers a physical injury as a result of another's
> negligence may recover for the accompanying mental anguish.  Second, a plaintiff may
> recover for negligent infliction of emotional distress when physical symptoms arise after
> and because of emotional distress, if the plaintiff was actually exposed to physical harm
> as a result of the negligence of another (the "zone-of-danger" rule).  Finally, a plaintiff
> may recover emotional distress damages when there has been a 'direct invasion of the
> plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction,
> or other like willful, wanton, or malicious conduct.'

556 N.W.2d 557, 560 (Minn. 1996).  Plaintiff has not asserted that he was ever placed in any sort

of physical danger by Defendants or suffered any type of physical harm.  Thus, the first two

circumstances with physical injury or zone of danger are inapplicable.  However, Plaintiff may

have a derivative claim for emotional distress damages if he is able to prove an underlying direct

invasion of his rights by libel as asserted against Beachside.  The viability of Plaintiff's libel

claim in his initial Complaint has not yet been the subject of a motion.  While Plaintiff's libel

claim may ultimately be unsuccessful, as long as a libel claim remains in Plaintiff's Complaint,

Plaintiff may allege a derivative emotional damages claim.  Therefore, Judge Boylan's ruling

disallowing the negligent infliction of emotional distress claim is reversed and Plaintiff may

assert it against Defendant Beachside as a derivative claim premised on his libel claim.  Judge

Boylan's ruling with respect to the negligent infliction of emotional distress claim is otherwise

adopted.

**G.    Denial of Invasion of Privacy by Publication of Private Facts Claim**

Plaintiff objects to Judge Boylan's refusal to allow him to add a claim for invasion of

privacy by publication of private facts.  The claim focuses on the minutes from two board

meetings in which Beachside stated by inference that Cohen was delinquent in paying his

assessments.  The minutes were allegedly sent to the members of the Beachside community.

Judge Boylan concluded that Cohen's claim was futile because the matter at issue was not

communicated to the public at large and is not highly offensive to a reasonable person.  Cohen

objects that not only was the matter published in Beachside's newsletter and sent to all members

of the Beachside community, but the Beachside members subsequently passed the newsletter

along to friends and acquaintances.  Defendant Beachside responds that there is no evidence that

the minutes were distributed to anyone other than members of Beachside.

To state a claim for invasion of privacy by publication of private facts, the matter

publicized must be of a kind that would be highly offensive to a reasonable person, and is not of

legitimate concern to the public.  Bodah v. Lakeville Motor Express, Inc., 663 N.W.2d 550, 553

(Minn. 2003).  Publicity means that "the matter is made public, by communicating it to the

public at large, or to so many persons that the matter must be regarded as substantially certain to

become one of public knowledge."  Id. at 557, citing Restatement (Second) of Torts § 652D cmt.

a.  In Bodah, the court held that a defendant's fax of 204 employees' social security numbers to

sixteen company managers in six different states did not constitute publication to the public or to

so large a number of persons that the matter must be regarded as substantially certain to become

public.  Id. at 557-78.  The court also held that a general allegation that the information is

31

possibly accessible to unknown individuals fails to aver publicity.  Id. at 558.

Here, Plaintiff has alleged that the meeting minutes were mailed to members of the Beachside community, "a small community of about fifty households in a small geographic area."  Am. Compl. at ¶ 283.  Plaintiff also alleges for the first time in his Objections to the Magistrate's Order that the Beachside members distributed the Beachside newsletter to friends and acquaintances.  Judge Boylan's conclusion that the mailing of the newsletter to Beachside residents did not constitute "publicity," and therefore that Plaintiff's proposed amendment was futile as a matter of law, is not clearly erroneous or contrary to law.  The distribution of the minutes was not to "the public at large."  In addition, Plaintiff's unsupported allegations that Beachside members passed the newsletter on to others does not now give rise to a contrary result.

## H.      Denial of Punitive Damages Claim

Plaintiff objects to Judge Boylan's ruling that Plaintiff may not assert a claim for punitive damages.  Judge Boylan based his determination on Plaintiff's failure to present clear and convincing evidence that any of the Defendants deliberately disregarded his rights, as required by Minn. Stats. §§ 549.191 and 549.20.  Plaintiff essentially argues that because Defendants Krietzman and Felhaber are "experts" in the law with respect to mortgage foreclosures and creditor's rights, this Court should conclude that they had absolute knowledge of the pertinent law and knew that they were collecting attorney's fees in an amount greater than that permitted by law.

The applicability of Minn. Stat. § 582.01 regarding mortgage foreclosures to the lien assessment foreclosure is confusing and uncertain, and therefore it is highly unlikely that

Defendants Krietzman and Felhaber were intentionally acting in contravention to what they believed § 582.01 mandated.  In addition, Judge Boylan correctly concluded that Plaintiff has submitted no evidence that Defendants Krietzman, Felhaber, and Beachside acted in any way that demonstrated a deliberate disregard for Cohen's rights or safety.  See Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1254-55 (8th Cir. 1994).  Consequently, Judge Boylan's finding with respect to punitive damages is adopted in its entirety.

## V. PLAINTIFF'S MOTION FOR LEAVE TO CITE ADDITIONAL AUTHORITY

On October 20, 2005, Cohen filed a Motion for Leave to Cite Additional Authority [Docket No. 94].  In his Motion, Cohen asks the Court to consider a new case in the District of Massachusetts, which purportedly disagrees with Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) and adopts an expansive interpretation of security enforcement activities as a method of collecting a debt and therefore covered by the FDCPA.  Pettway v. Harmon Law Offices, P.C., No. 03-CV-10932, 2005 WL 2365331, at*4-6 (D. Mass. Sept. 27, 2005).  Pettway is factually distinguishable from the present case and is not binding authority on this Court.

**VI. CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Plaintiff Cohen's Motion for Partial Summary Judgment [Docket No. 20] is **DENIED**.

2. Plaintiff Cohen's Appeal [Docket No. 83] to Judge Boylan's Order [Docket No. 80] is

**DENIED** with the limited exception of Plaintiff's ability to allege emotional distress damages as

an element of his libel claim.

3. Plaintiff Cohen's Motion for Leave to Cite Additional Authority [Docket No. 94] is

**DENIED**.


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 17, 2005.