# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Glenn S. Cohen,

|                        |                        |
|------------------------|------------------------|

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 05-706 ADM/JSM

Beachside Two-I Homeowners' Association;
Fredrick R. Krietzman;
Felhaber, Larson, Fenlon & Vogt, A
Professional Association;
U.S. Bancorp, d/b/a U.S. Bank Home
Mortgage,

Defendants.

_____

Glenn S. Cohen, *pro se*.

Christopher G. Angell, Esq., Murnane Brandt, St. Paul, MN, argued on behalf of Defendant Beachside Two-I Homeowners' Association.

Paul C. Peterson, Esq., Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, argued on behalf of Defendants Fredrick R. Krietzman and Felhaber, Larson, Fenlon & Vogt, P.A.

Charles N. Nauen, Esq. and David J. Zoll, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, argued on behalf of Defendant U.S. Bancorp d/b/a U.S. Bank Home Mortgage.

_____

## I. INTRODUCTION

On April 27, 2006, oral argument before the undersigned United States District Judge was heard on the following motions: (1) Defendant Beachside Two-I Homeowners' Association's ("Beachside") Motion for Partial Summary Judgment [Docket No. 157], (2) Defendants Fredrick R. Krietzman ("Krietzman") and Felhaber, Larson, Fenlon & Vogt, P.A.'s ("Felhaber") Motion for Summary Judgment [Docket No. 167], and (3) Defendant U.S.

Bancorp d/b/a U.S. Bank Home Mortgage's ("U.S. Bank")[1] Motion for Summary Judgment [Docket No. 162].  Also on April 27, 2006, the Court ruled from the bench, denying Plaintiff Glenn S. Cohen's ("Plaintiff" or "Cohen") Motion for Leave to Amend Memorandum of Law in Opposition to Defendant Beachside's Motion for Partial Summary Judgment [Docket No. 222].  On May 1, 2006, Cohen asked the court to reconsider its ruling.  Letter to District Judge [Docket No. 227].  For the reasons set forth herein, Defendants' Motions are granted and Plaintiff's request for reconsideration is denied.  Additionally, Plaintiff's Motion for Summary Judgment [Docket No. 189] is denied as moot.

## II. BACKGROUND[2]

On January 21, 2004, the Beachside Board of Directors ("Board") held a board meeting.  Angell Aff. [Docket No. 160] Ex. K.  Board members Sandal Hart, Phyllis Wirkkula, Marilyn Watt, Marci Antolik, and David Martin, and Property Manager Jim Stroebel, attended the meeting.  Id.  No other homeowners attended.  Id.  Minutes of the meeting were recorded by Secretary/Treasurer Marilyn Watt ("January 21 Minutes").  Id.  The section of the minutes entitled "Old Business" reports:

One homeowner has not paid dues for nine months—_____.[3]  Numerous attempts

---

[1] As noted in the November 17, 2005 Order [Docket No. 107], U.S. Bank National Association, not U.S. Bancorp d/b/a U.S. Bank Home Mortgage, is the proper party defendant to this action.

[2] The November 17, 2005 Order sets forth the facts of this case, and they are incorporated by reference.  Additional facts relevant to this Order are set forth in this Background section.

[3] At her deposition, President Sandal Hart testified that "our board policy is not to publish [in the meeting minutes] the name or the unit numbers of people who are behind [on payments].  The reason for publishing anything about accounts receivables is to give the membership information about the financial status of the association and their money."  Angell Aff. Ex. T (Hart Dep.) at 61.  As a result, homeowners receive meeting minutes in which names and

> have been made by the attorney to reach the homeowner by mail and telephone, and all attempts have been unsuccessful.  Therefore, the Board has elected to proceed with foreclosure of this unit since it is obvious the homeowner is not willing to work out any type of negotiated settlement for the outstanding dues.

Id.  The January 21 Minutes were later mailed to all Beachside homeowners by Omega Management, Beachside's management company.  Hart Dep. at 49.

On June 16, 2004, the Beachside Board held another meeting.  Angell Aff. Ex. O.  Board members Sandal Hart, David Martin, Marilyn Watt, and Beth Hambel, and Property Manager Jim Stroebel attended.  Id.  No other homeowners were in attendance.  Id.  The "Treasurer's Report" section of the minutes ("June 16 Minutes") states:

> Accounts receivables ended May with a balance of $6,293 in unpaid assessments, insurance, attorney fees, garage door charges and late fees.  The majority of the unpaid monthly assessments is due to one homeowner, and this property has been purchased by US Bancorp.  Beachside II-I received a check for payment in full on this delinquency June 1st.

Id.

## III. DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion

---

addresses have been "blanked out."  Id. at 50-51.

for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995).

**B.      Claims Against Beachside**

Beachside moves for summary judgment on Cohen's claims for defamation and negligent

infliction of emotional distress.  For the reasons stated herein, Beachside's Motion is granted.

**1.      Cohen's Request for Reconsideration of Motion for Leave to Amend
Memorandum of Law in Opposition to Defendant Beachside's Motion for
Partial Summary Judgment**

As an initial matter, the Court addresses Cohen's Request for Reconsideration of the

Court's ruling at oral argument that he may not amend his Memorandum of Law in Opposition

to Beachside's Motion for Partial Summary Judgment.  In his thirty-six page Opposition

Memorandum [Docket No. 206], filed April 10, 2006 and directed toward Defendants Beachside,

Krietzman, and Felhaber, Cohen addressed only approximately one and one half pages of

argument to Beachside's Motion.  Cohen then wrote: "Plaintiff apologizes for the brevity of this

section; he intends to petition the court to allow him to amend his response to have a more

complete brief."  Id. at 35.  Cohen then filed a Motion for Leave to Amend Memorandum of Law

in Opposition to Defendant Beachside's Motion for Partial Summary Judgment along with a

proposed amended memorandum of law on April 26, 2006, nine days after Beachside filed its

Reply Memorandum [Docket No. 215] and one day before oral argument.  In his Motion, Cohen

asserts several reasons why he was unable to complete his Opposition Memorandum within the

time allowed by the briefing schedule: (1) he filed multiple Motions to Compel and subsequently received over 2,000 pages of documents, (2) he had to respond to three summary judgment motions without the help of administrative support, and (3) he got married on April 2, 2006 and was on his honeymoon from April 13 to April 22.  At oral argument, the Court verbally denied Cohen's Motion.

Cohen now requests reconsideration, stating he did not have time to complete his memorandum because Magistrate Judge Janie S. Mayeron had not yet ruled on his March 7, 2006 Motion [Docket No. 173] requesting additional time to respond to Defendants' Summary Judgment Motions, and he relied on the assumption that he would be given additional time to respond.  Cohen argues that Beachside could be given an opportunity to file an amended reply brief, and oral argument on Beachside's Motion could be reargued.  Cohen's request for reconsideration is denied.  Cohen's workload is largely his own making: Cohen instituted this multi-claim lawsuit, suing four separate Defendants, and Cohen has filed many Motions.  Cohen also chose to represent himself rather than hiring counsel.  As a result, Cohen can not now be heard to complain that he did not have enough time to complete his memoranda within the standard briefing schedule that is routinely followed in civil cases.  Even if the Court were to consider Cohen's full memorandum, the result would not change, as Cohen fails to state a claim for defamation.

### 2.    Claim for Defamation[4]

Cohen's defamation claim is based on statements made by Secretary/Treasurer Marilyn

Watt ("Watt") in the January 21 Minutes and June 16 Minutes (collectively "meeting minutes").

Beachside claims that it is entitled to summary judgment on Cohen's defamation claim because

the statements were substantially true, privileged, and there is no evidence of resulting harm to

Cohen's reputation.  "In order for a statement to be considered defamatory, it must be

communicated to someone other than the plaintiff, it must be false, and it must tend to harm the

plaintiff's reputation and to lower him in the estimation of the community."  Stuempges v. Parke,

Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

### a.    Substantial Truth

Truth and substantial truth are defenses to a defamation claim.  Id. at 255.  "[T]rue

statements, however disparaging, are not actionable."  Id.  A "plaintiff cannot succeed in meeting

the burden of proving falsity by showing only that the statement is not literally true in every

detail.  If the statement is true in substance, inaccuracies of expression or detail are immaterial."

See Jadwin v. Minneapolis Star & Tribune Co., 390 N.W.2d 437, 441 (Minn. Ct. App. 1986).

"A statement is substantially accurate if its gist or sting is true, that is, if it produces the same

effect on the mind of the recipient which the precise truth would have produced."  Id.

Substantial truth is a question of law.  Id.

The January 21 Minutes contain three separate allegedly defamatory statements.  The

---

[4] At oral argument, Cohen asserted for the first time that the statements at issue are
defamatory per se, but conceded that he did not plead defamation per se in his Complaint.
Beachside did not brief the claim of defamation per se, but even if the statements in question are
defamatory per se, Cohen's claims still fail due to the defenses of substantial truth and qualified
privilege.

first is that: "One homeowner has not paid dues for nine months—_____."  Angell Aff. Ex.

K.  At the time the statement was published, Cohen had not made any payment to Beachside for

his monthly association dues since May 2003, for a total of eight months.  Angell Aff. Ex. E.

Cohen argues he did not send Beachside monthly checks during that time period because he

believed he had a substantial amount of credit on his account at that time—the disputed late fees

and legal fees—and therefore he did not owe any money to Beachside.  Angell Aff. Ex. H

(Cohen Dep.) at 98.  Regardless of whether the disputed late fees and legal fees should have

been considered as a credit toward his account, Beachside's statement remained substantially

true, as Cohen had not sent Beachside a check for monthly association dues in eight months.

The fact that the statement referred to nine months instead of eight months is an "immaterial

inaccuracy of detail" and does not change the analysis.

It provides the next allegedly defamatory statement is: "Numerous attempts have been made by the

attorney to reach the homeowner by mail and telephone, and all attempts have been

unsuccessful."  Angell Aff. Ex. K.  Beachside avers that Krietzman, its attorney, first contacted

Cohen by letter dated September 11, 2003.  Angell Aff. Ex. I.  Cohen then responded by letter,

dated October 18, 2003, advising Krietzman not to contact him again, and that he disputed the

amount alleged to be owed.  Angell Aff. Ex. J.  Cohen also made a settlement offer, stating that

if Beachside would bring his account balance down to zero, he would begin making regular

monthly payments again.  Id.  In his deposition, Cohen stated that he "kept getting the calls and

letters from Mr. Krietzman," that "there were a number of voice mails" and "a number of notices

sent."  Cohen Dep. at 143-44.  The only discussion Cohen testified he remembers having with

Krietzman prior to January 2004 is a phone conversation on November 20, 2003.  Id. at 144.

During the conversation, Krietzman told Cohen that Beachside might be willing to waive the late fees, and Cohen again suggested Beachside return his account to a zero balance. Id. at 149.

Based on the undisputed facts, the second allegedly defamatory statement is also substantially true. The first part of the statement, "numerous attempts have been made by the attorney to reach the homeowner by mail and telephone," is true. Cohen himself states that he received a number of voice mails and notices from Krietzman, yet he only responded by letter once and only spoke on the phone with Krietzman once. The second half of the statement, "and all attempts have been unsuccessful," is a closer question. It is not true literally, as Krietzman was able to "reach" Cohen twice, once by letter and once by phone. However, the vast majority of Krietzman's attempts did not result in contact with Cohen, and in the two that did, Cohen did not agree to pay the amount that Beachside claimed he owed. When the entire statement is considered in context, it is substantially true.

The third allegedly defamatory statement in the January 21 Minutes is: "Therefore, the Board has elected to proceed with foreclosure of this unit since it is obvious the homeowner is not willing to work out any type of negotiated settlement for the outstanding dues." Angell Aff. Ex. K. The first part of this sentence, "the Board has elected to proceed with foreclosure of this unit," is undisputedly true. See Cohen Dep. at 101-02. Cohen alleges that the second part of the sentence, "since it is obvious the homeowner is not willing to work out any type of negotiated settlement for the outstanding dues," is not true because he was willing to settle the dispute. Cohen Dep. at 103-06. Cohen states that he told Krietzman in his letter and on the phone that he was willing to resume paying monthly assessments if his Beachside account balance was brought to zero. Cohen's position was that if all the late fees and legal fees he had previously paid

8

"under protest" were attributed to his account balance for unpaid monthly association fees, the two would essentially cancel one another out and his account balance would be current. Beachside's position was that Cohen owed the previous late fees and legal fees as well as the unpaid monthly association dues, and therefore crediting him for the fees would not return his account balance to zero. Therefore, although Cohen had made a "settlement offer," Beachside was not willing to accept his offer, and there is no evidence that Cohen was willing to negotiate a settlement that included any payment for dues as well as fees. Id. As a result, Beachside's statement is substantially true.

The June 16 Minutes contain two allegedly defamatory statements. Angell Aff. Ex. O. The first is: "The majority of the unpaid monthly assessments is due to one homeowner, and this property has been purchased by US Bancorp." Id. In his deposition, Cohen testified that he does not know whether the first half of the sentence is true or not, since he does not know what other homeowners owed. Cohen Dep. at 107. He also testified that he believed the statement referred to him because he allegedly owed Beachside a large sum of money and $5,920.08 had just been removed from his escrow account. Id. The minutes state that accounts receivable totaled $6,293, and $5,920.08 is certainly the majority of $6,293. See Angell Aff. Ex. O. As a result, the first part of the statement is true.

Cohen contests the second half of the sentence because his property was not actually purchased by U.S. Bank. Cohen Dep. at 108-09. Cohen contends that U.S. Bank sent Beachside a check drawn from Cohen's tax escrow account to satisfy the lien against Cohen's property. Id. At her deposition, Sandal Hart testified that when Omega Management notified the Beachside Board that U.S. Bank had sent a check to "clear the entire accounts receivables from [Cohen's]

account," the Board incorrectly assumed that U.S. Bank had purchased Cohen's home.  Hart

Dep. at 59.  The Board's mistaken assumption does not render their statement substantially true.

Satisfying a lien amount of $5,000 is different from purchasing property likely worth

considerably more than that.  As a result, substantial truth is not a defense to the statement that

"this property has been purchased by US Bancorp."

The second allegedly defamatory sentence is: "Beachside II-I received a check for

payment in full on this delinquency June 1st."  Angell Aff. Ex. O.  Cohen argues that this

sentence is not true because the check was sent by U.S. Bank on either May 14 or May 17, 2004.

Cohen Dep. at 111.  While Cohen speculates that Beachside must have received the check from

U.S. Bank prior to June 1, Cohen has set forth no evidence to support his contention. The

substance of the statement—that Beachside received a check from U.S. Bank covering the full

amount of debt allegedly owed—is true.  The possibly incorrect date of June 1 is the type of

inaccurate detail that is immaterial.  As a result, the second allegedly defamatory sentence in the

June 16 Minutes is substantially true and is not defamatory.

### b.    Qualified Privilege

Qualified privilege is a defense to a defamation claim unless the privilege is abused.

Stuempges, 297 N.W.2d at 256-57.

> The law is that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.  When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel.  Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff can not recover.

Id.  The Minnesota Supreme Court has said:

> The doctrine of privileged communication rests upon public policy considerations.  As other jurisdictions recognize, the existence of a privilege results from the court's

> determination that statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory.  Whether an occasion is a proper one upon which to recognize a privilege is a question of law for the court to determine.

Lewis v. Equitable Life Assurance Soc'y of the United States, 389 N.W.2d 876, 889 (Minn. 1986).

Beachside argues that it is also entitled to summary judgment on Cohen's defamation claim because the statements were subject to qualified privilege and Cohen can not overcome the privilege by establishing actual malice.  Beachside argues that the statements were privileged because their publication was (1) limited to persons have a common interest in Beachside's financial well-being and (2) based on reasonable grounds.  Beachside relies on the Restatement (Second) of Torts § 596, which states: "An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know."  Beachside avers that Minnesota courts have recognized the "common interest" qualified privilege.  See Patmont v. Int'l Christian Missionary, 171 N.W. 302, 302 (Minn. 1919).  Beachside concedes that there are no Minnesota cases dealing with the applicability of the common interest qualified privilege in the context of a common interest homeowners' association, but relies on a New York case.  See Erdberg v. Freeman, 396 N.Y.S.2d 315 (N.Y. Civ. Ct. 1977).  In Erdberg, the court recognized a common interest qualified privilege for members of a tenants association, stating:

> It is apparent that the tenants and landlord of an apartment building constitute a group with a common interest in its security and quality as a residence.  Communication among members of such a group for the purpose of advancing that interest, made in good faith and published only to properly interested persons are protected from the hazards of an action for defamation by a qualified privilege.

Id. at 316.

Beachside is entitled to a common interest qualified privilege regarding its communications in the Board meeting minutes.  The Beachside Board, management company, and homeowners share a common interest in their town home community.  Members pay monthly assessments, which contribute to supporting the town home community.  The failure of some homeowners to pay their monthly assessments directly impacts the entire Beachside community.  As a result, the Beachside homeowners have a general right to be kept informed by the Board of the financial status of their community.

The statements in the Board meeting minutes entirely relate to the financial status of the community.  The Board limited the personal impact of the statements on Cohen by redacting personal identifying information, thereby ensuring that the community was generally informed when monthly assessments were not paid, without being aware of the identity of the homeowners in arrears.  Only the Beachside Board and the management company knew that the statements referred to Cohen, and those individuals needed to know of Cohen's identity, as it was their responsibility to resolve any alleged delinquencies with homeowners.  The Board also had reasonable grounds to believe that the statements were true, as the Board was relying on financial information provided to it by its management company.  See Hart Dep. at 33, 44-46, 51, 59, 63; Rudebeck v. Paulson, 612 N.W.2d 450, 454 (Minn. Ct. App. 2000) ("Reasonable grounds can exist if a person has valid reasons for believing a statement, even though the statement later proves to be false.").

Once a defendant has established the existence of a qualified privilege, the plaintiff must prove actual malice to recover.  Rudebeck, 612 N.W.2d at 454.  To prove malice, a plaintiff must

show that the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." Stuempges, 297 N.W.2d at 257. "Although malice is generally a question of fact, summary judgment is appropriate if the plaintiff fails to raise a genuine issue of material fact regarding malice." Kuelbs v. Williams, 609 N.W.2d 10, 16 (Minn. Ct. App. 2000). "When the only evidence presented of actual malice is that it was an alternative reason for the defendant's action, and there is 'direct evidence' that probable cause existed for the action taken, no jury question exists with respect to actual malice." El Deeb v. Univ. of Minn., 60 F.3d 423, 427 (8th Cir. 1995) (citations omitted).

Cohen argues that statements by Marilyn Watt show her malicious vendetta toward him, and negate any privilege that may have applied. Cohen offers an email from Watt to former Property Manager Jim Stroebel, in which Watt calls Cohen a "nerd," as evidence of Watt's malicious vendetta:

> Have I told you lately that I think Glen Cohen is a nerd??!!!!!  I'm thinking the settlement should be that he needs to keep current or we will file a lien on his property!! Or anything else we can get away with!!!  Since we know he's not going to have to pay the late charges, he'll just let the dues ride again, I'm sure.  Makes me so mad when these homeowners hold things over our heads!!

Cohen Aff. [Docket No. 207] Ex. O at H00670.  Cohen has failed to create a genuine issue of material fact with respect to malice.  While Cohen has offered some evidence that Watt had ill will toward Cohen, Cohen has offered no evidence that Watt's ill will motivated her to write the alleged defamatory statements in the Board meeting minutes.  More importantly, as discussed above, Beachside has proffered "direct evidence" that probable cause existed for Watt's statements in the meeting minutes.  The Board had a duty to keep the Beachside homeowners informed as to the financial status of the Beachside community.  The Beachside Board had

reason to believe that Cohen was behind in his monthly assessment payments based on information received from Beachside's management company. The Board informed the homeowners of the alleged delinquency in the meeting minutes, but only after removing identifying information as to the delinquent homeowner. Cohen's evidence of actual malice is merely an alternative reason for the alleged defamatory statements in the meeting minutes. Because Beachside has provided direct evidence that probable cause existed for the statements contained in the meeting minutes, Cohen has failed to establish actual malice or negate the existence of a qualified privilege.

In his Opposition Memorandum, Cohen argues that summary judgment is premature because he has Motions to Compel outstanding and thus discovery has not been completed. Beachside opposes Cohen's position, stating that the discovery period established in the Amended Pretrial Scheduling Order [Docket No. 153] has expired, and that Beachside provided Cohen approximately 500 documents in response to Cohen's discovery request. As discussed below with respect to Cohen's similar request regarding Krietzman and Felhaber's Motion for Summary Judgment, the parties have had more than enough time to conduct discovery in this matter, and accordingly, summary judgment is now appropriate.

### c.    Harm to Reputation

Beachside argues that regardless of whether the statements at issue were true or privileged, Cohen has failed to come forward with any evidence of resulting harm to his reputation. To establish a claim of defamation, the plaintiff must prove that the statements tended to harm his reputation or lower him in the estimation of the community. See, e.g., Stuempges, 297 N.W.2d at 255. Cohen's claim must fail as a matter of law if he has presented

14

no evidence of harm to his reputation.  See Combs v. R.R. Donnelley & Sons Co., 97 Fed. Appx. 685, 687 (8th Cir. 2004); Bauer v. Ford Motor Credit Co., 140 F. Supp. 2d 1019, 1023 (D. Minn. 2001), vacated in part by 149 F. Supp. 2d 1106 (D. Minn. 2001).

Cohen's defamation claim fails because he has provided no evidence that any of the statements in the meeting minutes harmed his reputation or lowered him in the estimation of the community.  In his deposition, Cohen agreed that other than Beachside Board members and employees of the management company, he was not aware of anyone that received the meeting minutes that knew that the minutes referred to Cohen, since Cohen's name was "blanked out" of all copies of the meeting minutes that were sent to homeowners.  Cohen Dep. at 97-98, 109-10. Cohen further admitted that he is unable to identify any individual that is not a member of the Beachside Board or is not an employee of the management company that now thinks less of him because of the statements.  Id. at 115-17.  Cohen further admitted that he has no evidence that any Beachside Board members or any members of Omega Management Company changed their opinion of him or thought less of him after reading the meeting minutes.  Id. at 174-76.

After his deposition, Cohen submitted second supplemental answers to Beachside's Interrogatories.  Angell Aff. Ex. V.  In his answer to interrogatory 16, Cohen identified James Stroebel, Brandi Wyatt, and Joni Timm as people who have "negative views of Plaintiff after the publishing of the defamatory statements."  Id. at 17.  Other than Cohen's conclusory statement, there is no evidence in the record as to how those three individuals view Cohen, or how their views of Cohen may have changed because of the meeting minutes.  Even if the Court accepts that these three individuals have a negative view of Cohen after the meeting minutes were published, Cohen has failed to present any evidence that these individuals view him in a different

light <u>as a direct result of</u> the meeting minutes.  In addition, at oral argument, Cohen stated that he

had no evidence of harm to his reputation.  For all the foregoing reasons, Cohen's defamation

claim fails and summary judgment is appropriate.

**3.     Claim for Negligent Infliction of Emotional Distress**

In the November 17, 2005 Order, the Court stated that although Cohen had not asserted

that he was ever placed in any sort of physical danger by Beachside or suffered any type of

physical harm, he may have a derivative claim for emotional distress damages if he is able to

prove an underlying direct invasion of his rights by libel.  Order at 30; <u>see also</u> <u>Lickteig v.</u>

<u>Alderson, Ondov, Leonard & Sweeten</u>, 556 N.W.2d 557, 560 (Minn. 1996).  Because Cohen's

defamation claim fails as a matter of law, his derivative negligent infliction of emotional distress

claim must fail as well.  <u>See</u> <u>Covey v. Detroit Lakes Printing Co., A Div. of Forum Publ'g Co.</u>,

490 N.W.2d 138, 144 (Minn. Ct. App. 1992) ("A negligent infliction of emotional distress claim

based on the same facts as a failed defamation claim cannot survive.").  As a result, Beachside's

Motion for Partial Summary Judgment on Cohen's claims for defamation and negligent infliction

of emotional distress is granted.

**C.     Claims Against Krietzman and Felhaber**

In his Complaint, Cohen alleges that Krietzman and Felhaber violated four sections of the

Fair Debt Collection Practices Act ("FDCPA"): 15 U.S.C. §§ 1692c(c), 1692e(5), 1692e(11),

and 1692f(1).  Cohen alleges that the Notice of Pendency to Foreclose Lien and Power of

Attorney to Foreclose Lien ("Notice") filed by Krietzman violated the FDCPA because it did not

contain a required disclosure notice, was a threat to take a foreclosure action that can not legally

be taken, and was an attempt to collect an amount that is not expressly authorized by the

agreement creating the debt or permitted by law.  Cohen alleges that Krietzman's April 13, 2004

letter ("April 13 letter"), April 13, 2004 voice mail,[5] and June 8, 2004 letter ("June 8 letter")

violated the FDCPA because Cohen had previously demanded that Krietzman cease all

communication.  Cohen further alleges that the April 13 letter was a threat to take a foreclosure

action that can not be legally taken.  Finally, Cohen alleges that Krietzman collected $5,920.08

from Cohen's tax escrow account with U.S. Bank, an amount greatly in excess of any amount

expressly authorized by the agreement creating the alleged debt or permitted by law.

1.      **Threshold Matters: Statute of Limitations and Status of Foreclosure Activities**

As an initial matter, Krietzman and Felhaber assert that pursuant to the FDCPA statute of

limitations, they are not liable for any actions taken prior to April 7, 2004.  15 U.S.C. § 1692k(d)

states: "An action to enforce any liability created by this subchapter may be brought in any

appropriate United States district court without regard to the amount in controversy, or in any

other court of competent jurisdiction, within one year from the date on which the violation

occurs."  With respect to letters, the statute of limitations begins to run the date the letter is

mailed.  Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir. 1992).  Cohen

filed his Complaint on April 7, 2005.  As a result, any FDCPA claims based on actions

committed by Krietzman and Felhaber prior to April 7, 2004 are barred by the statute of

limitations.

---

[5] In his Opposition Memorandum, Cohen admits that while he initially believed the voice mail in question was left on April 13, 2004, he later discovered that the voice mail was left on March 22, 2004, which is outside the statute of limitations for Cohen's FDCPA claim.  Opp'n Mem. at 22-23.  Consequently, Cohen withdraws his FDCPA claim with respect to Krietzman's voice mail.  Id.

Another threshold matter concerns whether Krietzman and Felhaber's actions constitute foreclosure activities and not debt collection activities subject to the FDCPA.  Krietzman and Felhaber cite district court cases from other jurisdictions to support their position that foreclosure activities are not debt collection within the meaning of the FDCPA.  See Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *3-4 (D.N.H. Feb. 9, 2005); Rosado v. Taylor, 324 F. Supp. 2d 917, 924-25 (N.D. Ind. 2004); Sweet v. Wachovia Bank & Trust Co., N.A., No. Civ. A. 3:03-CV-1212-R, 2004 WL 1238180, at *2 (N.D. Tex. Feb. 26, 2004); Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002); Heinemann v. Jim Walter Homes, Inc., 47 F. Supp. 2d 716, 722 (N.D.W. Va. 1998).  Cohen cites circuit court cases from other circuits to support his position that foreclosure is a debt collection activity subject to the FDCPA.  See Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376-77 (4th Cir. 2006); Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005); In re Martinez, 311 F.3d 1272 (11th Cir. 2002); Romea v. Heiberger & Assocs., 163 F.3d 111, 115-16 (2d Cir. 1998).  This issue has apparently not yet been decided by the Eighth Circuit.  The Court finds it unnecessary to reach this question of law because, even assuming that lien foreclosure constitutes debt collection under the FDCPA, Cohen's FDCPA claims fail.

**2.     Notice of Pendency to Foreclose Lien and Power of Attorney to Foreclose**

**a.     15 U.S.C. § 1692e(11)**

Cohen first alleges that the Notice filed by Krietzman with the Office of the Registrar of Titles in Hennepin County ("Registrar") on April 12, 2004 violates § 1692e(11) of the FDCPA because it did not contain certain required disclosures.  Cohen Aff. Ex. G.  Krietzman and Felhaber argue that the Notice does not violate the disclosure section of the FDCPA because

Cohen did not receive the Notice from Felhaber but rather obtained copies of the Notice from the Registrar.  Therefore, the Notice is not "communications with a consumer" or an attempt to collect a debt.  Krietzman and Felhaber also argue that the filing of documents does not trigger the FDCPA.  Cohen responds that due to the FDCPA's broad definition of "communication," the Notice conveys information about the debt to the public, and the FDCPA disclosures should have been included.  Also, the Notice is not the filing of a lawsuit, and therefore the exception for formal pleadings contained within § 1692e(11) does not apply.

15 U.S.C. § 1692e, directed toward preventing debt collectors from using false, deceptive, or misleading representations in connection with collecting a debt, prohibits:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).  "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  "Consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

Section 1692e(11) concerns communications with consumers that allegedly owe a debt, and attempts to ensure that those communications clearly convey that they are from a debt collector and are an attempt to collect a debt.  In this case, the Notice was not sent to the alleged debtor and was not created to attempt to collect the alleged debt owed.  Rather, the Notice was a document that Krietzman was required to file with the Registrar as a part of a foreclosure by

advertisement proceeding.  See Minn. Stat. §§ 580.032, subd. 3; 580.05.  While the Notice does

have the tangential affect of conveying information regarding the debt to any member of the

public that reads the Notice, it is not the type of communication that Congress sought to bar

within the scope of § 1692e(11).  In addition, while the phrase "with the consumer" does not

appear directly after "subsequent communications" in the latter half of the statute, the

appearance of that phrase directly after "initial communication" in the first part of the statute

suggests that    § 1692e(11) is designed to ensure that communications with the consumer

include the required disclosures.  Because the Notice was not a communication with a consumer

that attempted to collect a debt but rather a required administrative filing in connection with a

foreclosure proceeding, the Notice does not violate § 1692e(11).

> **b.**    **15 U.S.C. § 1692e(5)**

        Cohen alleges that the Notice also violates § 1692e(5) of the FDCPA because it is a

threat to take a foreclosure action that can not be legally taken.  Krietzman and Felhaber argue

that the Notice does not violate § 1692e(5) because it does not "threaten" to take legal action; it

is, in and of itself, an "action."  Also, Krietzman and Felhaber did not threaten to take an action

that they did not intend to take.  Their actions in proceeding with the foreclosure demonstrate

that they intended and did pursue foreclosure.  Krietzman and Felhaber further argue that they

did not threaten to take an action that could not be legally taken because Beachside's governing

documents authorized the foreclosure process.  Additionally, even if Krietzman and Felhaber

charged attorney's fees greater than the amount allowed by Minn. Stat. § 582.01, and the excess

amount is void, it does not make the entire foreclosure illegal.

        Cohen responds that the Notice violated § 1692e(5) because it threatened to collect

attorney's fees greater than the amount allowed by Minn. Stat. § 582.01, and threatened to collect late fees that were not authorized by the Beachside governing documents. Cohen further argues that the foreclosure documents are void because the Beachside Board members who voted in favor of foreclosure and signed the foreclosure documents were not elected to the Board in accordance with the procedures set forth by the governing documents.

15 U.S.C. § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." "Whether a document is threatening in nature is determined by whether it is informational, whether it contains an outright threat and how the least sophisticated debtor would construe it." Campion v. Credit Bureau Services, Inc., No. CS-99-0199-EFS, 2000 WL 33255504, at *9 (E.D. Wash. Sept. 20, 2000), citing Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996).

In this case, the Notice does not constitute a threat. The Notice is informational in character, setting forth information about the lien and the pending foreclosure by advertisement. The Notice does not contain a threat. The unsophisticated debtor would not construe the Notice as a "threat" but rather as a document providing information about a foreclosure proceeding that was in progress. Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) ("A court evaluating debt collection letters must view them through the eyes of the unsophisticated consumer."). Furthermore, as stated above, the Notice is simply a document that Krietzman was required to file with the Registrar as part of the foreclosure process. It was not sent to Cohen and did not "threaten" to do anything. As a result, the Notice, even if it (1) included an amount of attorney's fees not permitted by Minn. Stat. § 582.01, (2) included late fees not authorized by Beachside's governing documents, or (3) was signed and approved by

21

Beachside Board members that were not elected in accordance with the procedures set forth in the governing documents, it did not constitute a "threat" and therefore did not violate 15 U.S.C. § 1692e(5).

      **c.**      **15 U.S.C. § 1692f(1)**

Cohen also alleges that the Notice violates § 1692f(1) of the FDCPA because it is the collection of an amount that is not expressly authorized by the agreement creating the debt or permitted by law.  Cohen alleges that the Notice is an attempt to collect an amount of attorney's fees in excess of the amount permitted by Minn. Stat. § 582.01, and an attempt to collect late fees that are not authorized by Beachside's governing documents.  Krietzman and Felhaber argue that Beachside's governing documents specifically provide for the inclusion of costs, expenses, interest, reasonable attorney's fees, and assessments in a lien foreclosure.  They also argue that even if they did charge an amount in attorney's fees greater than the amount permitted by Minn. Stat. § 582.01, only the excess amount of fees is negated and the foreclosure itself is not rendered illegal.  Further, whether or not the late fees charged by Beachside were authorized is irrelevant because the lien amount did not include any late fees.

15 U.S.C. § 1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt, and specifically prohibits: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Upon purchasing his town home, Cohen became bound by Beachside's Declaration and Bylaws ("the governing documents").  The governing documents provide for the collection of assessments, "together with interest, costs, and reasonable attorney's fees," which

constitute a lien against the property.  Cohen Aff. Exs. A at Art. IV, § 1; B at Art. 11, § 1.  The governing documents further provide that each owner consents to the foreclosure of the lien, if the assessments are not paid within thirty days after the due date.  Cohen Aff. Exs. A at Art. IV, § 1; B at Art. 11, § 1.  The Notice does not violate 15 U.S.C. § 1692f(1) because the Beachside governing documents, which constitute the agreement creating the debt, expressly authorize the collection of reasonable attorney's fees.  The governing documents do not set forth a specific amount of fees to be collected because of the difficulty of determining in advance the legal effort each situation involving assessment collection and foreclosure will require.  As a result, the governing documents provide for the collection of "reasonable" attorney's fees, and there is no evidence that the amount charged by Krietzman in this case is not reasonable.[6]

Cohen's argument regarding the Association's collection of late fees is also unavailing.  In his affidavit, Krietzman sets forth a chart to show how the lien amount was calculated.  Krietzman Aff. at 4-6.  Krietzman avers that the lien amount did not include any component for interest or late fees.  Id.  Indeed, the chart shows that attorney's fees, assessments, and costs were included in the lien amount, but not late fees.  Cohen argues that Krietzman's chart of the lien amount is "nothing more than tricky drafting," because if the previously charged disputed late fees were to be considered and credited against his account, Cohen would not have had a negative balance in his account for unpaid assessments from May to August of 2003.  While Cohen disputes the late fees that were charged, whether or not the late fees were authorized is a

---

[6] Cohen argues that the amount collected exceeds the maximum permitted by Minn. Stat. § 582.01, and therefore is the collection of an amount not permitted by law.  Assuming *arguendo* that Krietzman and Felhaber violated Minn. Stat. § 582.01, they did not violate 15 U.S.C. § 1692f(1) because they satisfied the statute's alternative requirement, that the amount collected is expressly authorized by the agreement creating the debt.

separate issue.  Regardless of whether Cohen feels he was charged unauthorized late fees, the undisputed fact remains that he did not pay monthly assessments for several months.  Beachside recorded the unpaid monthly assessments, and those amounts were included in the lien amount.  While Cohen can dispute whether the late fees were authorized, he can not dispute that they were not included in the lien amount because the evidence shows otherwise.[7]  As a result, whether or not Beachside had the authority to charge late fees is irrelevant to whether the Notice violates § 1692f(1) of the FDCPA, and as stated above, Krietzman and Felhaber did not violate § 1692f(1).

### 3.    April 13 Letter

#### a.    15 U.S.C. § 1692c(c)

Cohen next alleges that Krietzman's April 13 letter violates 15 U.S.C. § 1692c(c) because Cohen had previously demanded in his October 18, 2003 letter ("October 18 letter") that Krietzman cease communication with him.  Cohen Aff. Exs. J, M.  Krietzman and Felhaber argue that the October 18 letter did not constitute a request to cease communications because it

---

[7] Krietzman's Affidavit shows that $100 of the $5,920.08 lien amount was collected for partial unpaid assessments for May 2003.  Krietzman Aff. at 4.  Cohen and Beachside's account statements leave some doubt as to whether the $100 was truly for unpaid assessments, or if it was for unpaid late fees and costs.  Cohen Aff. Ex. D; Angell Aff. Ex. F.  Doubt about this amount does not change the analysis with respect to § 1692f(1).  Although the Minnesota Common Interest Ownership Act ("MCIOA") does not apply to Beachside, it does permit homeowners' associations to impose charges for late payment of assessments.  Minn. Stat. §§ 515B.1-102(b)(3); 515B.3-102(a)(11).  Also, while the governing documents do not expressly allow for late fees of $10 and $20, they do allow for the collection of interest, costs, and reasonable attorney's fees.  Cohen Aff. Exs. A at Art. IV, § 1; B at Art. 11, § 1.  The governing documents expressly state that assessments past due by more than thirty days bear interest from the due date at the rate of 6% per annum.  Cohen Aff. Exs. A at Art. IV, § 10; B at Art. 11, § 1.  In consideration of the foregoing, as well as the purposes of the FDCPA, Krietzman and Felhaber have not violated § 1692f(1).  See 15 U.S.C. § 1692(e).

invited contact, and only advised that collection activity must stop.  Further, Cohen's previous

requests for cessation of contact were directed to the Association, not to Felhaber and Krietzman.

In addition, the letter fits within a statutory exception because it notified Cohen that the debt

collector intended to invoke a specific remedy.  Cohen responds that a fair reading of his

October 18 letter as a whole evinces a request not to be contacted by Krietzman and Felhaber

again.  Cohen also argues that the April 13 letter does not fit within a statutory exception

because the letter was written in part to return a check to Cohen, which Cohen alleges was an

attempt to collect a debt.

> 1692c(c) states:
>
> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt
> or that the consumer wishes the debt collector to cease further communication with the
> consumer, the debt collector shall not communicate further with the consumer with
> respect to such debt, except—
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified
> remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to
> invoke a specified remedy.
> If such notice from the consumer is made by mail, notification shall be complete upon
> receipt.

On September 11, 2003, Krietzman wrote to Cohen for the first time regarding Cohen's debt to

Beachside.  Cohen Aff. Ex. L.  Cohen responded on October 18, 2003, and a fair reading of

Cohen's letter reveals that Cohen disputed the alleged debt owed and no longer wished to be

contacted regarding the debt.  Cohen Aff. Ex. J.  In his letter, Cohen informs Krietzman that:

"On multiple occasions I have contacted the Homeowners' Association management and its

attorneys and advised them that I dispute the amount alleged to be owed and that they should no

longer contact me or send me any collection notices about the alleged debt."  Id.  While the prior

warnings given to the Association are not imputed to Krietzman, Cohen's October 18 letter puts Krietzman on notice that he no longer wishes to be contacted regarding the debt.  See Micare v. Foster & Garbus, 132 F. Supp. 2d 77, 81 (N.D.N.Y. 2001) (holding debt collector does not violate § 1692c(c) upon contacting debtor when debtor previously notified creditor rather than debt collector to cease communication).

Cohen also states in his letter: "I am further advising you that collection activity must stop . . . ."  Cohen Aff. Ex. J.  Even given that Cohen used the words "collection activity" rather than "communication," and Krietzman and Felhaber did not have to cease collection activity pursuant to the FDCPA, Cohen's pronouncement did put Krietzman and Felhaber on notice that he disputes the debt and no longer wishes to be contacted about it.  See Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 395 n.2 (6th Cir. 1998) (stating that while the FDCPA provides a mechanism for the consumer to request that the debt collector cease communication, the FDCPA does not require the debt collector to cease collection efforts).  Cohen concludes his letter: "I would be willing to settle this matter if the Association brings my account back down to a zero balance.  I would then begin regular monthly payments of $153 each month beginning November 1, 2003.  I will keep this offer open through October 31, 2003."  Cohen Aff. Ex. J. Cohen's "settlement offer" invites further contact, as Krietzman and Felhaber must be able to contact Cohen to discuss the viability of the settlement offer.  See Shrestha v. State Credit Adjustment Bureau, Inc., 117 F. Supp. 2d 142, 146 (D. Conn. 2000).  As a result, while Cohen's October 18 letter does inform Krietzman and Felhaber that Cohen wishes to have no further communication with respect to the debt generally, it does not ban any future communication. Cohen solicits Krietzman and Felhaber to communicate with him regarding settlement of the

debt.

Additionally, Krietzman and Felhaber may continue communicating with Cohen if their communication falls within one of the FDCPA's statutory exceptions.  Krietzman's April 13 letter returns a check from Cohen to Beachside in the amount of $459 "because the Association will no longer accept partial payment of the debt owed by you to the Association."  Cohen Aff. Ex. M.  The letter further states: "As I have made you aware, the association is proceeding in the foreclosure of its lien against your townhome unit . . . ."  Id.  Krietzman's April 13 letter does not violate the FDCPA for two reasons.  First, Cohen's check for $459 can be viewed as a settlement offer of partial payment for the debt he allegedly owed.  Beachside "rejected" his settlement offer, as it was not willing to accept partial payment.  Krietzman communicated that rejection to Cohen and returned the check.  Even if the check was not a "settlement offer," Beachside's refusal to accept the check made it necessary for Krietzman to return the check and communicate to Cohen why the check was being returned.  The letter was not otherwise an attempt to collect a debt, and does not violate the FDCPA.  In addition, the letter falls within the third statutory exception to 15 U.S.C. § 1692c(c) because Krietzman was further notifying Cohen of Beachside's intent to invoke a specified remedy, namely, foreclosure.

**b.      15 U.S.C. § 1692e(5)**

Cohen also alleges that the April 13 letter violates § 1692e(5) as a threat to take a foreclosure action that can not legally be taken, for the same reasons that Cohen alleges the Notice is a threat to take a foreclosure action that can not legally be taken.  Cohen's claim fails, for the same reason that it failed with respect to the Notice: the April 13 letter is not a "threat" within the meaning of the FDCPA.  See Campion, 2000 WL 33255504, at *9, citing Wade, 87

F.3d at 1100.  The letter does not "threaten" to take foreclosure action.  Rather, Cohen's check is returned to him to signify Beachside rejected partial payment for the alleged debt, and the letter informs Cohen that Beachside is proceeding with foreclosure.  The "unsophisticated debtor" would not construe Krietzman's letter as a threat to take foreclosure action in the future if Cohen did not pay the alleged debt, but rather informs Cohen that the foreclosure process is already underway.

### 4.      June 8 Letter

Cohen next alleges that Krietzman's June 8 letter violates 15 U.S.C. § 1692c(c) because Cohen had previously demanded that Krietzman and Felhaber cease all communication.  As stated above with respect to Krietzman's April 13 letter, Krietzman's letter does not violate the FDCPA if it concerns settlement of the alleged debt or falls within one of the statutory exceptions.  Krietzman and Felhaber argue that the June 8 letter falls within the first exception to § 1692c(c) because it constituted notice to Cohen that Krietzman and Felhaber were terminating their collection efforts.  Cohen responds that the letter violates § 1692c(c) because there is an "insidious element" to it that caused Cohen to have a "visceral response."

The June 8 letter provided Cohen with a copy of the Satisfaction and Release of Lien that Beachside recorded against Cohen's town home, and states that "[s]ince the Association's lien against the Unit has been paid through May 14, 2004, the Association has stopped the foreclosure of that lien."  Cohen Aff. Ex. N.  Regardless of Cohen's reaction to the letter and whether or not Cohen disputed the alleged debt owed, the letter does not violate the FDCPA because it falls squarely within the statutory exception for "advis[ing] the consumer that the debt collector's further efforts are being terminated."  15 U.S.C. § 1692c(c)(1); see also Order at 28.

28

**5.      Check from U.S. Bank**

Cohen alleges that Krietzman violated 15 U.S.C. § 1692f(1) by receiving the $5,920.08 check in satisfaction of the lien amount from U.S. Bank because it was an amount greatly in excess of any amount expressly authorized by the agreement creating the alleged debt or permitted by law.  The same arguments made with respect to Krietzman and Felhaber's alleged § 1692f(1) violation concerning the Notice are reiterated here.

Cohen moved for summary judgment on this same claim in his earlier Motion for Partial Summary Judgment [Docket No. 20].  The Court addressed the viability of this claim in its previous Order.  Footnote five noted: "The parties focus their arguments on the 'permitted by law' prong of the unfair practices test, rather than the 'authorized by the agreement' prong. Although the governing documents mention the collection of reasonable attorney's fees, they do not state a specific amount, here the $5,920.08 charged."  Order at 10 n.5.  In light of the arguments proffered by both parties at the time, the Court opined the amount of attorney's fees collected may have been greater than the maximum amount allowed by Minn. Stat. § 582.01, and therefore may not have been "permitted by law."  Order at 12-14.  The Court found summary judgment was not appropriate for this claim on the record before it as there was no evidence what portion of the attorney's fees solely related to foreclosure activities.  Id. at 15.

However, as is addressed above with respect to Cohen's § 1692f(1) claim concerning the Notice, the Court is not required to decide whether Krietzman and Felhaber violated the "permitted by law" prong of the statute because they have not violated the statute's alternative "authorized by the agreement" prong.  Therefore, assuming *arguendo* that Krietzman and Felhaber violated Minn. Stat. § 582.01, they still did not violate 15 U.S.C. § 1692f(1).  While

Beachside's governing documents, which constitute the agreement creating the debt, do not set forth a specific amount of fees to be collected, they do expressly authorize the collection of reasonable attorney's fees. Again, a fixed amount of attorney's fees is not appropriate given the varying complexity an assessment collection and foreclosure might pose. As a result, the governing documents provide for the collection of "reasonable" attorney's fees, and there is no evidence that the amount charged by Krietzman in this case is not reasonable. Additionally, as stated above, there is no component of late fees included in the lien amount.[8]

### 6.    Request to Reconsider

In his Opposition Memorandum, Cohen asks for reconsideration of a portion of the previous Order, denying Cohen's appeal of Magistrate Judge Arthur Boylan's Order. Judge Boylan's Order denied allowing Cohen to amend his Complaint to add additional claims for violation of the FDCPA. Krietzman and Felhaber oppose Cohen's request. As an initial matter, Cohen has failed to follow the rules regarding motions to reconsider. Local Rule 7.1(g) states:

> Motions to reconsider are prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion, and responses to such requests, shall be made by letter to the Court of no more than two pages in length, a copy of which must be sent to opposing counsel.

Cohen has not submitted a letter requesting permission to make a motion to reconsider. Even if he had, Cohen has not demonstrated any compelling circumstances to support reconsideration. No facts have changed. If Cohen were permitted to amend his Complaint, his claims would fail, as they do not state violations of the FDCPA, for the reasons stated in the Court's previous Order and Judge Boylan's Order. In addition, to the extent Cohen is seeking to have the Court

---

[8] Because Cohen has failed to state a claim for violation of the FDCPA, the Court does not reach consideration of the bona fide error defense. 15 U.S.C. § 1692k(c).

reconsider any of its previous rulings, such as whether or not the voluntary payment doctrine applies, Cohen's request is denied for the reasons already stated.

**D.      Claims Against U.S. Bank**

Cohen asserts three claims against Defendant U.S. Bank: (1) breach of fiduciary duty, (2) negligence, and (3) violation of Minn. Stat. § 333.01 for failure to file a certificate of assumed name.

**1.      Claim for Breach of Fiduciary Duty**

U.S. Bank argues that under Minnesota law, a bank is not in a fiduciary relationship with a customer; rather, the relationship is that of debtor and creditor. The only exception to the rule is where the bank knows or has reason to know that the customer is relying on the bank to counsel and inform him. In this case, U.S. Bank argues that it had no reason to know that Cohen was reposing any kind of special trust in U.S. Bank, and nothing in the record supports that the typical debtor-creditor relationship was somehow changed to that of a fiduciary relationship. Cohen responds that the creation of an escrow account for the purpose of paying real estate taxes transforms the ordinary debtor-creditor relationship between a bank and its customer to a fiduciary relationship. Cohen argues that U.S. Bank had a fiduciary duty to administer his escrow account in a competent and professional manner, and that duty was breached when U.S. Bank paid $5,920.08 to Beachside from Cohen's escrow account without first contacting Cohen to verify the validity of Beachside's claim.

"Generally, a bank is not in a fiduciary relationship with a customer, rather the relationship is one of debtor and creditor." Hurley v. TCF Banking & Sav., F.A., 414 N.W.2d 584, 587 (Minn. Ct. App. 1987). In Minnesota, there is no fiduciary relationship between a bank

31

and its customer "unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him."  Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 623 (Minn. 1972).  Cohen has provided no evidence that U.S. Bank knew or had reason to know that he was placing his trust and confidence in U.S. Bank.  In addition, a review of Cohen's mortgage contract, as well as case law from other jurisdictions considering the status of real estate tax escrow accounts created by mortgages, establishes the relationship between Cohen and U.S. Bank was that of a debtor and a creditor.  See Cohen Aff. [Docket No. 204] Ex. A; Judd v. First Fed. Sav. and Loan Ass'n of Indianapolis, 710 F.2d 1237, 1241 (7th Cir. 1983); Kronisch v. Howard Sav. Inst., 392 A.2d 178, 180-82 (N.J. Super. Ct. App. Div. 1978), and cases cited therein.  U.S. Bank had no fiduciary relationship to Cohen and therefore no duty was breached.

### 2. Claim for Negligence

U.S. Bank argues that Minnesota law does not permit a negligence action where the duties owed arise exclusively under a contract.  U.S. Bank argues that the duties it owed to Cohen were purely contractual in nature, and as a result, Cohen can not maintain a negligence action against U.S. Bank.  Cohen responds that he is not alleging negligent breach of contract but rather that U.S. Bank acted negligently in its capacity as fiduciary of the real estate tax escrow account.  Cohen alleges that as a fiduciary, U.S. Bank owed Cohen a duty of care, and it breached that duty of care when it negligently paid $5,920.08 to Beachside.

Negligent breach of contract is a cause of action not recognized in Minnesota, and as a result, Cohen has no viable negligence claim on the contract between himself and U.S. Bank. Lampert Lumber Co. v. Joyce, 405 N.W.2d 423, 424 (Minn. 1987).  To recover in tort on a claim

of negligence, "a plaintiff must prove as one element that the defendant breached 'some duty imposed by law, not merely one imposed by contract.'" D & A Dev. Co. v. Butler, 357 N.W.2d 156, 158 (Minn. Ct. App. 1984) (citations omitted).  Cohen and U.S. Bank's relationship was contractual in nature, and no tort duty was breached.  Finally, Cohen states that his negligence claim is based on U.S. Bank's breach of the duty of care in its capacity as a fiduciary.  However, as stated above, Cohen and U.S. Bank were not in a fiduciary relationship.  Consequently, Cohen's negligence claim fails as a matter of law.

### 3.    Claim for Failure to File Certificate of Assumed Name

U.S. Bank argues that it is not required to file a certificate of assumed name with the Secretary of State, pursuant to Minn. Stat. § 333.01, because the true name of U.S. Bank National Association is set forth in the name U.S. Bank Home Mortgage.  Cohen responds that although the purpose of the statute is not specifically to enable litigants to identify the true name of entities, U.S. Bank is still in violation of the statute.  Cohen argues that if U.S. Bank were in full compliance with the requirements of Minn. Stat. § 333.01 without having to file a certificate of assumed name, then its consumer mortgage division would need to be named "U.S. Bank National Association Home Mortgage."  Cohen avers that as a result of U.S. Bank's statutory violation, he is entitled to $250 in costs pursuant to Minn. Stat. § 333.06.

Minn. Stat. § 333.01, subd. 1 states that:

No person shall hereafter carry on or conduct or transact a commercial business in this state under any designation, name, or style, which does not set forth the true name of every person interested in such business unless such person shall file in the office of the secretary of state, a certificate setting forth the name and business address under which the business is conducted or transacted, or is to be conducted or transacted, and the true name of each person conducting or transacting the same, with the address of such person.

Minn. Stat. § 333.001, subd. 2 states that a "person" can include a "corporation."  Minn. Stat.

§ 333.001, subd. 3 defines "true name" to mean "the full corporate name as stated in its articles, if a corporation."  Minn. Stat. § 333.06 states: "If [any person conducting a business contrary to the terms of sections 333.001 to 333.06] defends against a civil action, the plaintiff shall be entitled to tax $250 costs, regardless of which party prevails upon the merits."

As one might expect, there is very little case law interpreting the foregoing statutes. However, the Minnesota Court of Appeals has said that "[t]he purpose of Minnesota tradename law is to protect the integrity of tradenames and to protect corporate creditors.  It is not for the purpose of providing the public with a means to ascertain the correct name of an entity to properly designate it in a lawsuit."  Watson v. Stonewings on the Lake, 393 N.W.2d 518, 520 (Minn. Ct. App. 1986).  In Watson, plaintiffs sought to avoid their failure to serve the summons and complaint on defendant within the two-year statute of limitations period by asserting that Stonewings' failure to register its tradename prevented them from ascertaining Stonewings' correct legal identity.  Id.  The plaintiffs were able to execute service on Phil Eder of Phil Eder Enterprises, Inc., d/b/a Stonewings on the Lake, even though "Stonewings on the Lake" was not registered as a tradename with the secretary of state.  Id. at 519.  The court held that even though "filing tradenames with the secretary of state's office may serve an unintended purpose of providing information to prospective litigants," plaintiffs had not established the necessary elements for the court to estop defendant from asserting the statute of limitations as a defense. Id. at 520.

In this case, U.S. Bank's Certificate of Corporate Existence shows that its full name is U.S. Bank National Association.  Nauen Aff. [Docket No. 165] Ex. 7.  Cohen's mortgage contract was with an entity named U.S. Bank Home Mortgage.  U.S. Bank National Association

is doing business as U.S. Bank Home Mortgage but has not filed a certificate of assumed name with the secretary of state. While the words "National Association" are not included in U.S. Bank's "Home Mortgage" name, it has complied with the spirit of the law by including "U.S. Bank," the words that effectively provide U.S. Bank with its identity and make it readily recognizable to the public. This is not a case like <u>Watson</u> where the assumed name, Stonewings on the Lake, gave no indication whatsoever as to the identity of the underlying corporation, Phil Eder Enterprises, Inc. On the contrary, U.S. Bank is a nationally known corporation, and there is no evidence that Cohen encountered any serious problems in serving the proper Defendants in this case. Keeping the stated purpose of Minn. Stat. § 333.01 in mind, an award of statutory costs pursuant to Minn. Stat. § 333.06 is not appropriate. Consequently, summary judgment is granted for U.S. Bank with respect to all of Cohen's claims against it.

### 4. Summary Judgment Not Premature

As a final matter, Cohen alleges summary judgment is premature against U.S. Bank. Cohen states that Magistrate Judge Mayeron has not yet ruled on his Motion to Compel [Docket No. 136] U.S. Bank to produce additional documents. Cohen argues that the requested documents will contain further evidence that U.S. Bank violated its policies regarding real estate tax escrow accounts.

Summary judgment is not premature. This case was filed on April 7, 2005, giving the parties ample time to conduct discovery.

### E. Cohen's Remaining Claims

Cohen's remaining claims against Defendant Beachside assert breach of contract and violation of Minnesota statutes. Cohen no longer has any federal claims against any Defendants,

and as a result, the Court declines to exercise supplemental jurisdiction over Cohen's remaining state law claims.  28 U.S.C. § 1367(c)(3); Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Beachside Two-I Homeowners' Association's Motion for Partial Summary Judgment [Docket No. 157] is **GRANTED**;

2. Defendants Fredrick R. Krietzman and Felhaber, Larson, Fenlon & Vogt, P.A.'s Motion for Summary Judgment [Docket No. 167] is **GRANTED**;

3. Defendant U.S. Bancorp d/b/a U.S. Bank Home Mortgage's Motion for Summary Judgment [Docket No. 162] is **GRANTED**; and

4. Plaintiff Glenn S. Cohen's request for reconsideration [Docket No. 227] of his Motion for Leave to Amend Memorandum of Law in Opposition to Defendant Beachside's Motion for Partial Summary Judgment [Docket No. 222] is **DENIED**;

5. Plaintiff's Motion for Summary Judgment [Docket No. 189] is **DENIED AS MOOT**;

6. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The federal case is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 29, 2006.